In the

# United States Court of Appeals
## For the Seventh Circuit

No. 04-4108

JULIAN C. BETHEL,

*Petitioner-Appellant,*

*v.*

UNITED STATES OF AMERICA,

*Respondent-Appellee.*

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 04 C 371—**John C. Shabaz,** *Judge.*

ARGUED NOVEMBER 9, 2005—DECIDED AUGUST 17, 2006

Before POSNER, ROVNER and WOOD, *Circuit Judges.*

ROVNER, *Circuit Judge.* Julian C. Bethel pled guilty to one count of conspiracy to distribute more than 100 kilograms of marijuana in violation of 21 U.S.C. § 846. He was sentenced to 192 months' imprisonment. That sentence was based in part on the classification of Bethel as a "career offender" pursuant to § 4B1.1 of the U.S. Sentencing Guidelines ("Guidelines"). We affirmed that sentence in an unpublished order, *United States v. Bethel*, 2003 WL 1545261 (7th Cir. March 24, 2003), and Bethel subsequently filed a motion to vacate his sentence under 28 U.S.C. § 2255. The crux of Bethel's claim is that his attorney provided ineffective assistance by failing to warn him before he pled guilty that he would be subject to treatment as a

career offender, instead advising him that his sentence would be in the range of 100-125 months, substantially less than the 192 months to which he was ultimately sentenced. The district court rejected his claim, and we affirm.

**I.**

A grand jury returned an eight-count indictment against Bethel and three co-defendants. Count I charged all four defendants with conspiracy to distribute and possession with intent to distribute more than 100 kilograms of marijuana. Count V charged Bethel with distributing marijuana. The remaining counts were directed at Bethel's co-defendants. Following his March 2001 arrest, Bethel made many incriminating statements to law enforcement officers about his drug-related activities. He told the officers he had been dealing marijuana since January 1998. Although the officers were able to verify that Bethel regularly dealt in large quantities of marijuana, Bethel claimed he was never a "big dealer," and that the largest quantity of marijuana he bought at any one time was twelve pounds. Bethel provided varying estimates of his marijuana purchases, at first conceding that he regularly purchased five pounds of marijuana per week, but subsequently admitting to buying seven pounds every two weeks. He stated that in the middle of 1998, he was purchasing approximately six pounds of marijuana per month from his co-defendants, and by the end of 1998, he was averaging three to five pounds per week. In 1999, he averaged ten to twenty pounds per month, but slowed his buying habits somewhat in 2000 after he was approached by the Dane County Narcotics Gang Task Force. The probation office calculated that, by Bethel's own admissions, he purchased approximately 480 pounds (or 218 kilograms) of marijuana between April 1998 and March 2001. Law enforcement officers also interviewed six people who purchased mari-

juana from Bethel. Those purchases totaled approximately 930 pounds (or 422 kilograms). Having bought and sold nearly a half ton of marijuana in a three-year period, Bethel apparently had a different definition of "big dealer" than most people would have.

Bethel pled guilty to Count I; Count V was dismissed. Prior to pleading guilty, his lawyer advised him that he was facing a sentence of 100 to 125 months. The lawyer predicted that Bethel would start with a base offense level of 28 under Guideline 2D1.1(a)(3) because he sold more than 400 but less than 700 kilograms of marijuana. Counsel anticipated that Bethel would receive a three-level reduction under Guideline 3E1.1 for acceptance of responsibility because Bethel pled guilty promptly after his indictment and cooperated with the government. Based on Bethel's prior criminal record, the lawyer opined that Bethel's criminal history category would rate a level V.

The probation office prepared a presentence report ("PSR") that recommended the same Guideline range that Bethel's attorney had calculated, 100 to 125 months of imprisonment. The government, however, objected to this calculation, and recommended that Bethel be sentenced as a career offender pursuant to Guideline 4B1.1. The application of Guideline 4B1.1 increased the base offense level from 28 to 34 and raised the criminal history category from V to VI. The resultant sentencing range was 188 to 235 months. The government based this argument on two prior state court convictions, one for possession with intent to distribute cocaine and one for battery. Bethel conceded that the prior state court drug conviction qualified as a felony for the purposes of the Guidelines but disputed the characterization of the battery conviction as a felony crime of violence. According to the criminal complaint for the battery, during an argument with his girlfriend, Marie Johnson, Bethel slapped a telephone out of her hands, wrapped his hands around her neck and pinned her to a wall. He

squeezed her neck, pressing against her windpipe with his thumbs so that she could neither speak nor breathe. He released his hold when Johnson's friend intervened. Bethel told Johnson, "I could have killed you but I didn't." Bethel pled guilty to a Wisconsin misdemeanor charge of battery and received a sentence of forty-five days in jail and two years of probation. The government noted that although Bethel was convicted of misdemeanor battery under Wis. Stat § 940.19, he also was charged as a repeat offender under Wis. Stat. § 939.62. Under the repeat offender provision, he was subject to a term of up to three years of imprisonment which, the government argued, qualified as a felony crime of violence under either subsection of Guideline 4B1.2.

Neither Bethel's attorney nor the probation office initially interpreted Bethel's criminal record this way and so neither realized that Bethel could be subjected to the career offender provision of the Guidelines. Bethel's attorney promptly objected to the government's recommendation that Bethel be sentenced as a career offender. Counsel noted that § 940.19 carried a maximum penalty of nine months' imprisonment and that the habitual criminal enhancement count under § 939.62 was dismissed at Bethel's sentencing hearing in state court. Counsel based this argument on a review of the Circuit Court Automation Program, a database that showed the habitual criminal enhancement as dismissed as of sentencing. Counsel indicated he had filed a written request for the case file from the Dane County Clerk of Courts Office in an attempt to verify this information. It is unclear from the record whether counsel had reviewed the database prior to advising Bethel on his probable sentence or whether the attorney did not investigate this issue until the government raised it as an objection to the PSR.

In any case, the probation office agreed with the government and filed an addendum to the PSR recommending that

Bethel be sentenced as a career offender with a sentencing range of 188 to 235 months. Apparently, while Bethel was on probation for the Wisconsin assault charge (he also was still on probation for the Wisconsin conviction for possession with intent to deliver cocaine), he assaulted Johnson again, broke down the door of her home, and failed to report to his probation agent as required. For these new incidents, both Wisconsin probations were revoked and he was sentenced to an additional six months' imprisonment on the assault charge to be served consecutively to an additional three years on the cocaine charge. The federal probation office therefore opined that Bethel was subject to a maximum three year term for his original assault and thus was a two-time felon at the time of his sentencing in the instant case.

The only dispute at Bethel's sentencing hearing was whether the career offender provision applied. Guideline 4B1.1(a) sets forth the relevant factors in making this determination:

> A defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

Bethel did not dispute the first two factors. For the last factor, Bethel conceded that he had one prior conviction meeting the provision, the 1994 conviction for possessing cocaine with the intent to deliver. The center of the sentencing hearing was the 1995 conviction for battery. The description of the crime foreclosed argument about whether this was a crime of violence. With both the government and the probation office now characterizing the battery as a felony, the district court sentenced Bethel as a career offender to 192 months' imprisonment. We subsequently affirmed Bethel's sentence, citing as dispositive *United*

*States v. Bissonette*, 281 F.3d 645, 646-47 (7th Cir. 2002). Although *Bissonette* post-dated Bethel's sentencing, Bethel maintains that his attorney should have been able to predict the application of the career offender provision under then-existing Supreme Court precedent, namely *United States v. LaBonte*, 520 U.S. 751 (1997).

After we affirmed the sentence on direct appeal, Bethel moved to vacate his sentence under 28 U.S.C. § 2255 on the ground that his attorney provided ineffective assistance by failing to advise him that he would be eligible for treatment as a career offender.[1] The district court denied Bethel's request to hold an evidentiary hearing, deeming it unnecessary under 28 U.S.C. § 2255. The court noted that under *Strickland v. Washington*, 466 U.S. 668 (1984), Bethel must show that his lawyer's representation fell below an objective standard of reasonableness, and that the deficient performance so prejudiced his defense that it deprived him of a fair trial. In the context of a guilty plea, the court observed that Bethel must show that but for counsel's deficient advice, he would have insisted on proceeding to trial. After noting these standards, the court analyzed Bethel's claim:

> Petitioner has not demonstrated that his counsel's actions fell below an objective standard of reasonableness or that absent the advice of counsel he would have proceeded to trial because he would still have been subjected to the career offender sentence. Accordingly, petitioner was not denied effective assistance of counsel and his motion under 28 U.S.C. § 2255 on this ground will be denied.

---

[1] In his *pro se* motion, Bethel also argued again that the court erred by sentencing him as a career offender and that his sentence violated *Apprendi v. New Jersey*, 530 U.S. 466 (2000). Those claims are not part of this appeal.

*Bethel v. United States*, No. 04-C-371-S, Memorandum and Order, at 4-5 (W.D. Wisc. Sept. 21, 2004). The district court subsequently denied Bethel's request for a certificate of appealability. We construed his notice of appeal as an application for a certificate of appealability in this court. We found that Bethel had made a substantial showing of the denial of a constitutional right on the issue of whether counsel was ineffective when he failed to warn Bethel that he could be sentenced as a career criminal offender. We granted the certificate of appealability as to that issue, granted Bethel's motion to proceed *in forma pauperis*, and *sua sponte* appointed counsel.

## II.

On appeal, Bethel argues that he meets both prongs of the *Strickland* test to establish ineffective assistance of counsel. First, he contends that his lawyer's performance fell short of objectively reasonable standards when he failed to advise Bethel that he could be subject to the career offender provision, exposing him to a sentence nearly twice as long as the one counsel predicted. Second, Bethel maintains he has credibly shown that but for counsel's deficient advice, there is a reasonable probability that he would not have accepted the plea agreement, but instead would have insisted on putting the government to its burden of proof at trial.

## A.

In early May 2001, Bethel signed a plea agreement with the U.S. Attorney's office. The plea agreement provided in relevant part:

> The defendant understands that any guideline computation discussions are not part of the plea agreement. The defendant should not rely upon the possibility of a

> particular sentence based upon any guideline computa-
> tion discussions between defense counsel and the
> United States.

R. 31, at 4. Bethel also acknowledged in the plea letter that
the United States made no promises or guarantees regard-
ing the sentence to be imposed, and that the court could
impose any sentence up to the statutory maximum subject
to the limits imposed by the Guidelines. R. 31, at 4.

At Bethel's change of plea hearing, the district court
posed a series of questions in order to determine that
Bethel's plea was both knowing and voluntary. R. 109, at 3-
7. After determining that Bethel understood his plea
agreement and had discussed it with his lawyer, the court
asked Bethel if anyone made any other promise or assur-
ance to him to induce him to plead guilty. R. 109, at 7, 10.
Under oath, Bethel denied that anyone had made any
promises or assurances. He also affirmed his understanding
(1) that his sentence could be more severe than he might be
expecting; (2) that the statutory minimum was five years'
imprisonment and the maximum was forty years; (3) that
the government reserved the right to challenge the Guide-
lines computations prepared by the probation office; (4) that
the government agreed in its discretion to move for a
sentence reduction if Bethel provided substantial assistance
to the government but that the court was not obliged to
grant the motion; (5) that any Guideline computation
discussions were not part of the plea agreement; (6) that
Bethel should not rely upon the possibility of a particular
sentence based on guideline computation discussions held
between defense counsel and the government; and (7) that
the court was free to reject any recommendation as to
sentence and was free to impose any sentence up to and
including the statutory maximum subject only to the limits
of the Guidelines. R. 109, at 15, 18-22. The court also asked
Bethel:

> Do you understand that the Court will not be able to
> determine the guideline sentence for your case until

> after the presentence report has been completed and . . . you have had the opportunity as will the government to challenge the reported facts and the application of the guidelines recommended by the probation officer and that the sentence imposed may be different from any estimate your attorney may have given you. . . . Is that your understanding, Mr. Bethel?

R. 109, at 22. Bethel replied, "Yes, sir." *Id*. Bethel also affirmed that he understood that the Court had the authority in some circumstances to depart from the Guidelines and impose a sentence that was either more severe or less severe than the sentence called for by the Guidelines.[2] The court explained again that after Bethel pled guilty, a presentence report would be prepared to assist the court in determining an appropriate sentence. At the end of this discussion, Bethel entered a plea of guilty.[3] R. 109, at 39.

**B.**

When a district court denies a petition under § 2255, we review fact findings for clear error and issues of law *de novo*. *Galbraith v. United States*, 313 F.3d 1001, 1006 (7th

---

[2] Bethel's change of plea hearing and sentencing hearing were held in 2001, long before the Supreme Court ruled that the Guidelines were to be treated as advisory rather than mandatory. *See United States v. Booker*, 543 U.S. 220 (2005).

[3] The court also walked Bethel through the various applicable provisions of the plea agreement itself, confirming his understanding of the terms of that document and his assent to the agreement. The plea agreement provided that if Bethel provided substantial assistance to the government in an investigation or prosecution of another person, the government would, in its discretion, move under Guideline 5K1.1 for a downward departure in Bethel's sentence. The plea agreement reserved to both Bethel and the government the right to challenge the Guidelines calculations made by the probation office.

Cir. 2002). The district court made no fact-findings and our review is thus *de novo*. In order to make out a claim for ineffective assistance of counsel in the context of a guilty plea, a defendant must show (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that there is a reasonable probability that, but for counsel's errors, the defendant would not have pled guilty and would have insisted on going to trial. *Hill v. Lockhart*, 474 U.S. 52, 57-59 (1985); *Strickland*, 466 U.S. at 687-88. *See also Moore v. Bryant*, 348 F.3d 238, 241 (7th Cir. 2003) (to show ineffective assistance in the context of a guilty plea, a defendant must demonstrate that counsel's advice regarding the plea was objectively unreasonable and that there is a reasonable probability that, but for counsel's error, the defendant would not have pled guilty but would have insisted on going to trial); *Galbraith*, 313 F.3d at 1008 (to meet the prejudice prong of the *Strickland* test in the context of a guilty plea, the defendant must show that but for counsel's error, he would not have pled guilty).

When assessing counsel's performance, we have noted that a reasonably competent lawyer will attempt to learn all of the relevant facts of the case, make an estimate of a likely sentence, and communicate the results of that analysis to the client before allowing the client to plead guilty. *Moore*, 348 F.3d at 241. *See also United States v. Cieslowski*, 410 F.3d 353, 358-59 (7th Cir. 2005), *cert. denied*, 126 S. Ct. 1021 (2006) (to prove inadequate performance, a defendant must show that counsel did not attempt to learn the facts of the case and failed to make a good-faith estimate of a likely sentence); *United States v. Martinez*, 169 F.3d 1049, 1053 (7th Cir. 1999) (to provide effective assistance of counsel in a guilty plea, counsel must attempt to learn the facts of the case and make a good-faith estimate of a likely sentence); *United States v. Barnes*, 83 F.3d 934, 939 (7th Cir.), *cert. denied*, 519 U.S. 857 (1996) (a reasonably competent counsel will attempt to learn all of the facts

of the case, make an estimate of a likely sentence, and communicate the results of that analysis to the client). The Supreme Court has noted the many uncertainties surrounding the difficult decision of whether to plead guilty. *McMann v. Richardson*, 397 U.S. 759, 769-70 (1970). Because many questions about the facts and how a court or jury will apply the law to those facts cannot be answered by counsel with certitude, "[w]aiving trial entails the inherent risk that the good-faith evaluations of a reasonably competent attorney will turn out to be mistaken either as to the facts or as to what a court's judgment might be on given facts." *McMann*, 397 U.S. at 770.

Although a gross mischaracterization of the sentencing consequences of a plea may strongly indicate deficient performance, it is not proof of deficiency. *Cieslowski*, 410 F.3d at 359. The government does not contest Bethel's claim that his lawyer failed to advise him that he would be subject to the career offender provision, which exposed him to nearly double his lawyer's estimate of the applicable Guidelines sentencing range. The salient question is whether counsel undertook a good-faith effort to determine the applicable facts and estimate the sentence. An inaccurate prediction of a sentence alone is not enough to meet the standard. *Barnes*, 83 F.3d at 940; *United States v. Arvanitis*, 902 F.2d 489, 494 (7th Cir. 1990). Because the district court declined to hold a hearing, the record is wholly undeveloped on the issue of the efforts that Bethel's lawyer undertook to estimate Bethel's sentence before recommending that Bethel plead guilty. We do not know, for example, whether counsel examined the state's database for information on the battery charge before he advised Bethel about his sentence or only after the government objected to the PSR. We do not know if the database inaccurately showed that the habitual criminal enhancement count under § 939.62 had been dismissed at Bethel's sentencing hearing in state court. Nor do we know whether counsel investigated the

effect of Bethel's probation violation on that dismissal. At best, we know that whatever error counsel made was repeated by the probation office when it first calculated the sentencing range. It is certainly possible in this situation that Bethel's attorney made a good-faith effort to learn all of the relevant facts and calculate a probable sentence and still made a mistake. Although the effect of the mistake was a rather large discrepancy in the possible sentence predicted, the error could have been based on a subtle misinterpretation of Bethel's state court criminal record, which itself appears somewhat muddled. *See Galbraith*, 313 F.3d at 1008 (the ineffective assistance analysis takes place in the context of a presumption that an attorney's conduct is reasonably proficient). Because there was no hearing on the issue, however, there is simply not enough here to determine what efforts counsel undertook in calculating the sentencing range he communicated to Bethel. We thus cannot determine whether counsel's performance fell below an objective standard of reasonableness.

But even if we assume that counsel's advice regarding the plea was objectively unreasonable (and again, we make no such judgment today), Bethel has not shown that, absent counsel's erroneous advice, he would not have pled guilty but would have insisted on going to trial. In an affidavit in support of his § 2255 motion, Bethel asserted, "[M]y appointed counsel 'coerced' me into pleading guilty with misinformation as to the sentence that I would receive in exchange for my plea." R. 91, ¶ 5. In describing that misinformation, he complains that through the pre-trial stage, the change of plea hearing and the first PSR, he was not informed that his sentence could be enhanced under the career criminal provisions of the Guidelines. R. 91, ¶ 6. Although it appears true that no one mentioned this particular enhancement to him, the district court advised Bethel that his sentence could be more severe than he might be expecting; that the government reserved the right

to challenge the Guidelines computations prepared by the probation office; that any Guideline computation discussions were not part of the plea agreement; and that Bethel should not rely upon the possibility of a particular sentence based on Guideline computation discussions held between defense counsel and the government. The court advised Bethel that "the Court will not be able to determine the guideline sentence for your case until after the presentence report has been completed and . . . you have had the opportunity as will the government to challenge the reported facts and the application of the guidelines recommended by the probation officer and that the sentence imposed may be different from any estimate your attorney may have given you." R. 109, at 22. The court thus informed Bethel in six or seven different ways that he could not rely on any particular predictions or discussions about a possible sentence when he entered his plea. Under oath, Bethel stated that he understood all of this and still wanted to plead guilty. In doing so, he was affirming that his guilty plea was not made in reliance of a particular sentence. He cannot now be heard to complain that he would not have pled guilty if he had known his sentence would be more severe than his lawyer predicted. He specifically disclaimed that risk at his change of plea hearing.

We have stated many times that a mere allegation by the defendant that he would have insisted on going to trial is not sufficient to establish prejudice. *Cieslowski*, 410 F.3d at 359; *Berkey v. United States*, 318 F.3d 768, 772-73 (7th Cir. 2003), *cert. denied*, 541 U.S. 1055 (2004); *Barker v. United States*, 7 F.3d 629, 633 (7th Cir. 1993), *cert. denied*, 510 U.S. 1099 (1994). Bethel has more than a mere allegation; he can show that his lawyer's prediction was mistaken by a considerable margin. *See Moore*, 348 F.3d at 242-43 (an erroneous sentencing prediction of nearly double the time that the defendant would actually have faced had he proceeded to trial is precisely the type of information that

is likely to impact a plea decision); *Barnes*, 83 F.3d at 940 (a gross mischaracterization of the sentencing consequences of a plea may provide a strong indication of deficient performance). That margin might give us pause if Bethel had not repeatedly insisted at his plea hearing that he was not relying on a particular sentence in entering his plea. *See United States v. Peterson*, 414 F.3d 825, 827 (7th Cir.), *cert. denied*, 126 S. Ct. 592 (2005). In that case, Peterson moved to withdraw his guilty plea, arguing that it was involuntary because his attorney falsely promised him that his federal sentence would run concurrently with any punishment under state law. At his plea hearing, Peterson, like Bethel, insisted that no one had promised him anything in exchange for his plea. The judge then asked Peterson if he understood that the sentences might not be concurrent and he indicated that he did. We remarked, "Judges need not let litigants contradict themselves so readily; a motion that can succeed only if the defendant committed perjury at the plea proceedings may be rejected out of hand unless the defendant has a compelling explanation for the contradiction." *Peterson*, 414 F.3d at 827. Bethel's situation differs only in that the court did not inquire about the specific Guideline provision that is now at issue. Bethel made broad and repeated concessions that he understood his sentence could be more severe than predicted and that he was not relying on a particular sentence in signing the plea agreement and pleading guilty. He offers no compelling explanation for his current claim that he would not have pled guilty had he known his sentence would be higher than predicted, a claim that directly contradicts his statements at the change of plea hearing. To prove the prejudice prong of the *Hill* analysis, a defendant must show that his lawyer's deficiency was a decisive factor in his decision to plead guilty. *Martinez*, 169 F.3d at 1053; *Barnes*, 83 F.3d at 940. Having assured the court that sentencing was not a factor (much less a decisive factor) in his decision to plead guilty, Bethel fails to make the requisite showing.

Bethel relies on *Moore* for the proposition that his plea colloquy did not remove the prejudice of his lawyer's erroneous advice regarding sentencing. 348 F.3d 238. But *Moore* is distinguishable in several respects. Moore maintained his innocence throughout the pre-trial process, unlike Bethel who confessed almost immediately. *Moore*, 348 F.3d at 240. Moore changed his plea only reluctantly after his lawyer told him that he would face ten years if he pled guilty or twenty-two to twenty-seven years if convicted at trial. *Moore*, 348 F.3d at 242-43. In fact, Moore faced a sentence of twelve and half to fifteen years if he was convicted at trial. At his change of plea hearing, Moore indicated that he did not wish to proceed with the plea, then changed his mind and entered the plea. He then moved to withdraw the plea soon after entering it. *Moore*, 348 F.3d at 243. Bethel never indicated any ambivalence about his plea. But the determinative difference between Moore and Bethel is that nothing in Moore's plea colloquy addressed whether his plea was based on any predictions as to his sentence. *Moore*, 348 F.3d at 243. Nothing at the plea alerted Moore to the possibility that he was misinformed as to the choice he faced. *Id*. As we noted above, the district court told Bethel in six or seven different ways that his sentence could be more severe than he expected and greater than his attorney predicted. Bethel understood and agreed and pled guilty anyway, thereby enjoying a three-level reduction for acceptance of responsibility. *Moore* is therefore inapposite.

Bethel finally argues that, had he known he was subject to the career offender provision, he would have negotiated a different plea deal for himself than the one he accepted. But that is not the test. Under *Hill* and its progeny, a claim that a defendant would not have entered this particular plea agreement is not sufficient to show prejudice. *Hill*, 474 U.S. at 59; *Martinez*, 169 F.3d at 1053; *Arvanitis*, 902 F.2d at 489. To demonstrate prejudice, the defendant must show that he would not have pled guilty

and would have insisted on going to trial. Whether he could have negotiated a better plea deal is irrelevant to the issue of prejudice in the ineffective assistance context. It is unlikely Bethel would have insisted on going to trial in any case because, shortly after his arrest, he confessed to selling hundreds of pounds of marijuana. He never challenged the admissibility of that confession and, in combination with evidence of a controlled buy and the testimony of his co-defendants, his conviction was a virtual certainty. No doubt his lawyer would have advised him to plead guilty even if counsel had accurately predicted the application of the career offender provision. We doubt Bethel would have traded the three-level acceptance of responsibility reduction for the privilege of a trial with a virtually certain result. But we need not engage in that speculation because Bethel himself assured all concerned that he wished to plead guilty no matter what the sentencing consequences of that plea turned out to be. He was therefore not prejudiced by his lawyer's advice.

AFFIRMED.

A true Copy:

Teste:

_____
*Clerk of the United States Court of Appeals for the Seventh Circuit*