NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued October 16, 2008
Decided November 12, 2008

**Before**

KENNETH F. RIPPLE, *Circuit Judge*

TERENCE T. EVANS, *Circuit Judge*

JOHN DANIEL TINDER, *Circuit Judge*

No. 08-1048

| | |
|---|---|
| HILARIO SANTOS, | Appeal from the United States District |
| *Petitioner-Appellant*, | Court for the Northern District of |
| | Illinois, Eastern Division. |
| *v.* | |
| | No. 06 C 4822 |
| UNITED STATES OF AMERICA, | |
| *Respondent-Appellee*. | Matthew F. Kennelly, *Judge*. |

**O R D E R**

After receiving a tip from a participant in a cross-country drug deal, authorities arrested all three participants, including Hilario Santos. Santos eventually pleaded guilty to possessing cocaine and marijuana with the intent to distribute and was given a 10-year sentence, the mandatory minimum. *See* 21 U.S.C. § 841(a)(1), (b)(1)(A). We dismissed Santos's direct appeal and he then sought postconviction relief under 28 U.S.C. § 2255, claiming that his trial counsel was constitutionally ineffective. According to Santos, counsel did not sufficiently investigate the tipster and, consequently, recommended pleading guilty rather than going to trial and pressing an entrapment

defense.  The district court rejected this argument, holding that Santos had no chance at making a successful entrapment defense.  Thus, the court denied Santos's § 2255 motion, but it issued a certificate of appealability.

As early as June 2003, DEA agents believed that Santos and Martin Moreno were involved in transporting drugs to Chicago.  They monitored Moreno's movements, even placing a tracking device on the truck he owned, but did not take significant action until December 2003 when Moreno contacted the authorities and reported that he was en route to Chicago from Los Angeles in a truck containing 11 kilograms of cocaine and 50 pounds of marijuana.  Moreno explained that Santos, who was making the trip by plane, was the source of the drugs and intended to sell them to a buyer unknown to Moreno.  Moreno met with DEA agents who equipped him with a hidden audio recorder and told him to go through with the drug deal.  After Santos's plane landed, Moreno picked him up at Midway Airport and drove him to the meeting with the buyer, William Robinson.  DEA agents moved in and arrested all three men after watching Santos transfer seven kilograms of cocaine from Moreno's truck to Robinson's car.  Santos and Robinson were indicted together, and both pleaded guilty.  Moreno, by contrast, was released shortly after the arrests.  He was never charged with a crime, and the government eventually lost track of him.

After pleading guilty, Santos filed a notice of appeal, but we granted appellate counsel's motion to withdraw and dismissed the appeal.  *United States v. Santos*, 189 Fed. App'x 534 (7th Cir. 2006).  Santos then filed his pro se motion under § 2255, claiming four overlapping grounds for ineffective assistance of counsel, but on appeal he discusses only the claim that counsel did not sufficiently investigate a potential entrapment defense.  The district court ordered the government to respond to Santos's motion, but the government did not.  In response, the court appointed counsel and ordered an evidentiary hearing.  The court explained that it had adopted this practice in response to the government's repeated failures to answer § 2255 petitions after being ordered to do so.  (At oral argument, counsel for the government assured us that it was not intentionally thumbing its nose at Judge Kennelly but that the failure to respond was due to administrative snafus.  The government also assured us that those problems were now resolved.)

The district court limited the scope of the evidentiary hearing to the question of whether Santos's trial lawyer, Nishay Sanan, performed below an objective standard of reasonableness.   At the hearing, Sanan testified that Santos chose to plead guilty after

they discussed the possibility of an entrapment defense several times. Sanan explained that he concluded that the defense was not tenable after he interviewed Santos 8 to 10 times and read a statement that Santos had written in Spanish for the lawyer. The English translation of that statement, which the government introduced at the hearing, runs 25 pages. Santos explains in the statement that he met Moreno through Faustino Calderon, a friend in Chicago who ran a trucking company. Calderon was a DEA informant, though he did not make his contacts with Santos at the direction of the agency, and there is no evidence in the record that attorney Sanan was aware of Calderon's connection to the DEA. Santos recounts in his statement that Calderon called him frequently and left many messages asking for help in finding drivers to transport drugs across the country. Santos tried to recruit two friends, but they would not get involved with Calderon unless Santos himself participated, and Santos refused. That changed, Santos recalls in his statement, after he met Moreno, one of Calderon's drivers.

Santos's statement suggests that Moreno had been sent by Calderon to encourage Santos to recruit drivers, but instead of finding drivers to transport drugs for Calderon, Santos teamed up with Moreno to transport drugs for a different source. Santos's statement is difficult to understand, but it appears that Santos approached that source, known as "El Chori,"[1] seeking drivers for Calderon, but El Chori suggested instead that Santos enlist Moreno to transport drugs for El Chori without telling Calderon. El Chori would not trust Moreno to transport the drugs unless he was accompanied by Santos. Santos, according to his statement, was reluctant to participate because he was on probation, so Moreno asked that El Chori send someone else to supervise him. But El Chori refused to budge, and Santos relented when Moreno promised him a share of the proceeds and that he would teach him to drive a truck. Moreno made a second trip for El Chori and, at El Chori's insistence, Santos rode with Moreno again. When the time came for a third trip, Santos told El Chori that he did not want to participate anymore. El Chori agreed at first and offered to accompany Moreno but backed out at the last minute and insisted that Santos accompany Moreno, as he had done twice before. Santos told Moreno that he did not want to go, and Moreno told him that was alright. In the end, though, Santos decided to go by plane and meet Moreno in Chicago, though he told Moreno not to tell El Chori about the arrangement. This was the trip that ended in Santos's arrest.

---

[1] In Spanish, chori can mean knife or small-time crook. HarperCollins Spanish Unabridged Dictionary 213 (7th ed. 2003).

Attorney Sanan testified at the hearing that he tried to locate Calderon and Moreno during the pretrial investigation but without success. Sanan tried to find Calderon by searching Bureau of Prisons records and looking for his trucking company but could not find him. Sanan asked the government where Moreno was, but the government agents said they did not know. Regarding the possibility of an entrapment defense, Sanan said that he had conveyed to Santos his conclusion that such a defense could not succeed. As Sanan explained, he believed that Santos could not show entrapment because, even if Moreno was a government agent, there had been no significant inducement causing Santos to participate in the drug deal. Sanan was also concerned that going to trial and putting on an entrapment defense could hurt Santos at sentencing because he would not get the benefit of an acceptance of responsibility sentencing discount and that he might be penalized for obstructing justice if he testified falsely. Sanan testified that, after he explained why making an entrapment defense would be unwise, Santos decided to plead guilty and seek to cooperate with the government in an attempt to get a sentence below the 10-year minimum.

Santos also testified at the evidentiary hearing, but counsel greatly limited the scope of his testimony. Santos expressed dissatisfaction with one of the lawyers who represented him before Sanan, but counsel did not ask any questions about Sanan beyond why Santos hired him and how much Santos paid him. Santos offered no testimony whatsoever about Sanan's handling of his case and, therefore, did not contradict Sanan's testimony that they had discussed at length a potential entrapment defense. In addition, Santos offered no testimony at all about his decision to plead guilty and what motivated that decision.

After the evidentiary hearing, the district court asked Santos to make an offer of proof concerning the prejudice he allegedly suffered from attorney Sanan's alleged shortcomings. Santos explained that he would call at least four witnesses: Calderon, Moreno, a DEA agent, and the unnamed source who first alerted the DEA to Moreno's and Santos's involvement in drug smuggling. Notably, though, Santos did not say that he had located Calderon or Moreno or even knew the name of the source. And while Santos asserted that these witnesses would support his argument that Sanan should have advised him to go to trial and raise an entrapment defense, he did not identify their expected testimony except in the most indefinite and vague terms.

The district court denied Santos's motion, holding that Sanan had not rendered ineffective assistance. The court assumed that any reasonable defense lawyer would

have wondered whether Moreno had been acting as a government informant all along. But, the court continued, given what Santos told Sanan, Sanan correctly concluded that, even if Moreno was an informant, an entrapment defense was untenable because the inducement was hardly extraordinary and Santos showed little reluctance to becoming involved in the drug deal. The court also rejected Santos's other arguments that Sanan had been ineffective. After denying Santos's motion, the district court granted a certificate of appealability limited to "the claim that the defendant was denied effective assistance of counsel by his attorney's failure to investigate and present an entrapment defense."

On appeal, Santos argues that the district court should have held that his trial counsel was constitutionally ineffective. When a district court denies a § 2255 motion, we review fact findings for clear error and we review legal issues de novo. *See Suggs v. United States*, 513 F.3d 675, 678 (7th Cir. 2008). To prove ineffective assistance of counsel, Santos was required to satisfy the familiar two-pronged test of *Strickland v. Washington*, 466 U.S. 668 (1984). That is, he had to show that "counsel's performance was deficient" and that "the deficient performance prejudiced the defense." *Id.* at 688; *see also Suggs*, 513 F.3d at 678. And because he pleaded guilty, Santos could establish prejudice only by demonstrating that but for counsel's alleged errors "he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59; *see also Bethel v. United States*, 458 F.3d 711, 716-17 (7th Cir. 2006).

Although Santos's brief claims that he would not have pleaded guilty absent attorney Sanan's alleged errors, there is absolutely no support for this assertion in the record. As we have held, "a mere allegation by the defendant that he would have insisted on going to trial is not sufficient to establish prejudice." *Bethel*, 458 F.3d at 718. But Santos's allegation is not just unsupported, it is also belied by uncontradicted evidence. Santos has never contradicted his trial counsel's testimony that they discussed the entrapment defense at length, that counsel concluded that making the defense was unwise, and that Santos himself decided to plead guilty and cooperate with the government in the hopes of getting a lower sentence. Santos only argues generally that Sanan erred by advising him against raising an entrapment defense. This is wrong: the court correctly held that an entrapment defense had absolutely no chance of succeeding. But even if Santos were correct that Sanan erred and an entrapment defense was even arguable, he would still have the obstacle of showing that had he been given advice to that effect he would have chosen to go to trial. *See United States v. Cieslowski*, 410 F.3d 353, 359 (7th Cir. 2005). Santos has simply never provided any

support for such a showing; he has never said that knowing what he knows now, he would have chosen not to plead guilty.

Santos's failure to focus on the guilty plea is fatal to his claim, but his argument respecting the possible entrapment defense fails as well. Because Santos's claim is one that his lawyer failed to adequately investigate, he had the burden of making a "'comprehensive showing as to what the investigation would have produced.'" *Richardson v. United States*, 379 F.3d 485, 488 (7th Cir. 2004) (quoting *Hardamon v. United States*, 319 F.3d 943, 951 (7th Cir. 2003)). But he did not try to make such a showing. In his offer of proof to the district court, Santos spoke only in the conditional tense, explaining what witnesses supposedly "could" explain and what he "believe[d]" their testimony could establish. Santos did not represent that he had located or interviewed the four witnesses he intended to call, and indeed, one of them is not even identified by name in the offer of proof. Santos states repeatedly that more investigation would have led to the development of an entrapment defense that could have succeeded at trial, but because he failed to spell out how he intended to prove that contention, this argument must fail. *See Richardson*, 379 F.3d at 488 (rejecting failure-to-investigate claim where movant provided no evidence of what further investigation would have revealed); *Hardamon*, 319 F.3d at 951 (same).

Santos's silence on how he could prove an entrapment defense is enough to doom his claim on its own, but based on the evidence in the record, there is no doubt that any argument he actually could have made would be doomed as well. This is so because Santos's current lawyers misunderstand Santos's 25-page narrative. Santos's brief asserts that Moreno, a possible government informant, and Calderon, a definite government informant, pressured Santos to participate in the drug delivery that led to his arrest. But a close reading of Santos's statement shows that the three drug-running trips that Santos admittedly participated in were done for El Chori without Calderon's knowledge. As Santos himself describes the situation in his statement, "Martin [Moreno] was already working behind Faustino[ Calderon]'s back." Further-more, Moreno was not the one pressuring Santos to participate in the drug smuggling; it was El Chori who applied the pressure. Moreno twice told Santos that he did not care if Santos participated, but El Chori insisted. Thus, any inducement came from El Chori, a man that Santos has never suggested was a government informant. Santos insists that he was caught up in a scheme of Calderon and Moreno's devisement, but if anyone was responsible for the scheme it was El Chori or Santos himself. Moreno met Santos while looking for drivers to haul Calderon's drugs, but instead, Santos suggested that Moreno

haul El Chori's drugs.  Based on Santos's statement, Moreno was brought into the scheme by Santos, not the other way around.

Finally, Santos's entrapment claim is frivolous for yet another reason.  To prove entrapment, a defendant must show both an improper government inducement and a lack of predisposition to commit the crime.  *See Mathews v. United States*, 485 U.S. 58, 63 (1988); *United States v. Bek*, 493 F.3d 790, 800 (7th Cir. 2007).  Importantly, that inducement must be "extraordinary."  *United States v. Haddad*, 462 F.3d 783, 790 (7th Cir. 2006).  When a defendant takes a "simple, ordinary opportunity to commit a crime," he cannot make an entrapment defense.  *Id.*  Thus, even assuming that the scheme was devised by Calderon and Moreno and both were working for the government, Santos would not be able to show entrapment because any inducement from those men was not at all extraordinary.  Santos argues that the men badgered and coerced him, calling several times a day, but persistence alone is not the "extraordinary inducement" required for a successful entrapment defense.  *See United States v. Millet*, 510 F.3d 668, 676-77 (7th Cir. 2007).  Santos says that he rode along with Moreno the first time because he wanted to learn to drive a truck, but a promise to teach a defendant to drive a truck is far from the extraordinary inducement required to show entrapment.  Santos claims that he was reluctant to participate, but he has never argued, let alone testified, that his reluctance was worn down by anything other than persistence, wanting to profit from drug sales, and wanting to learn to drive a truck.  The district court was, therefore, correct to conclude that attorney Sanan was not ineffective for failing to further develop an entrapment defense.

For all these reasons, we AFFIRM the judgment of the district court.