In the

# United States Court of Appeals

## For the Seventh Circuit

No. 12-2814

MARVEL THOMPSON,

*Petitioner-Appellant,*

*v.*

UNITED STATES OF AMERICA,

*Respondent-Appellee.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 11 C 3454 — **Elaine E. Bucklo**, *Judge.*

ARGUED OCTOBER 8, 2013 — DECIDED OCTOBER 18, 2013

Before BAUER, POSNER, and EASTERBROOK, *Circuit Judges.*

PER CURIAM. Marvel Thompson pleaded guilty to conspiring to possess and distribute cocaine and heroin, *see* 21 U.S.C. §§ 846, 841(a)(1), and was sentenced to 540 months in prison. This court affirmed the judgment. *See United States v. White*, 582 F.3d 787 (7th Cir. 2009). Thompson then filed a motion to vacate under 28 U.S.C. § 2255 alleging that (1) the government breached agreements with him (and two others who cooperated on his behalf) to recommend that he serve between 108

and 135 months in prison, and (2) his attorneys rendered ineffective assistance at the time he pleaded guilty, at sentencing, and on appeal. The district court denied his motion, and we affirm.

## I.  BACKGROUND

In 2004, Thompson was charged by indictment along with 45 others for participating "in a long-running conspiracy involving the distribution of vast amounts of cocaine, heroin, and marijuana by the Black Disciples street gang in Chicago." *White*, 582 F.3d at 793. Thompson was the gang's leader (known as a "king"), who oversaw the South Side drug operations, and used guns and ordered violence to further the gang's interests. *Id.* at 793–94.

After his arrest Thompson immediately began negotiating a plea agreement with the government, hoping to limit his sentence to 10 years' imprisonment and secure the return of more than $300,000 worth of property that the government had seized. He claims the government "tentatively agreed" to these terms with him and his first attorney. But when Thompson's second attorney, Jack Friedlander, presented Thompson with a draft of the finalized plea agreement offered by the government, the terms were less favorable. Specifically the factual basis of the agreement required Thompson to admit that he had been the king of the Black Disciples, had used guns to further the conspiracy's objectives, and was responsible for greater drug quantities than Thompson was willing to acknowledge. Moreover, the government was only willing to recommend a sentence of 15, rather than 10, years and refused to return Thompson's seized property.

Thompson informed Friedlander that "under no circumstances" would he agree to the terms of the written plea agreement, but nevertheless proceeded with a change of plea hearing. When Thompson arrived for the hearing, the district judge allowed him an opportunity to speak with Friedlander and his family, who all urged Thompson to accept the written plea agreement. After that conversation, Friedlander advised the judge that Thompson would not accept the written agreement, but that "against [counsel's] advice" he wished to enter a "blind plea." Thompson told the judge: "I want to plead guilty to the things that I done, and things in that plea I can't plead guilty to it because I didn't do it." Concerned that Thompson was affected by the emotional conversation he had with his family, the judge recessed the hearing until later in the afternoon.

Thompson alleges that during the recess he spoke with Friedlander and the prosecutor and reached an agreement to plead guilty to a limited factual basis if the government would agree to a Guidelines range of 108 to 135 months' imprisonment. When the hearing resumed Friedlander expressed concern that, despite his efforts to explain the nature of the conspiracy charge, Thompson's understanding of conspiracy and the law of conspiracy were "two different things." The court conducted a thorough colloquy as required by Federal Rule of Criminal Procedure 11, advising Thompson of the minimum and maximum penalties he would face, ensuring that no promises had induced his plea, and warning him that the government at sentencing would seek to increase his Guidelines imprisonment range by proving the aggravating factors that Thompson refused to admit. Thompson then

pleaded guilty to the conspiracy charge, and though he would
not admit to the entire factual basis offered by the government,
he did admit having sold more than five kilograms of cocaine
and one kilogram of heroin to two members of the conspiracy,
Donnell Jehan and Kenyatta Coates, knowing that they would
resell the drugs. Thompson also explicitly acknowledged that
the government would attempt to prove additional facts at
sentencing. The district court accepted his plea.

Thompson also claims that the government had agreed
with two individuals to recommend that Thompson receive a
sentence of about 10 years if those individuals would partici-
pate in a government investigation, which they did.

Shortly after pleading guilty, Thompson hired Andrea
Gambino to replace Friedlander. Thompson now complains
that Gambino refused to present evidence about the agree-
ments between the government and the individuals cooperat-
ing on his behalf or argue that the government had breached
those agreements. But in fact Gambino did call one of the
individuals to testify at the sentencing hearing. This individual
explained that she cooperated with the government because "it
was supposed to help" Thompson. But Gambino clarified,
without objection from Thompson, that no formal agreement
was ever reached enabling Thompson to receive credit for this
cooperation. The government recommended a life sentence
(based in part on an offense level increased by more significant
drug quantities than Thompson had pleaded to, as well as
adjustments for Thompson's leadership role and possession of
guns) and, although it acknowledged the cooperating individ-
ual's work, argued that Thompson should receive no leniency

because he was never forthcoming and truthful with the government.

Thompson now says that he was so frustrated with Gambino, even at that time, that he attempted to file his own brief on appeal focusing on the government's breach of its agreements. The pro se brief that Thompson in fact submitted (and that this court refused to accept for filing), however, nowhere mentions any agreements between Thompson or the other individuals and the government. This court upheld Thompson's sentence, concluding that the government submitted a "mountain of evidence" in support of the adjustments for Thompson's leadership role and possession of guns. *See White*, 582 F.3d at 794–98. Given the ample evidence against Thompson and his continued insistence that he was barely involved with the Black Disciples or the distribution of drugs, this court repeatedly characterized him as having lied to or misled the district court, so much so as to warrant an obstruction of justice enhancement. *See id.* at 796–97.

Thompson, who eventually retained counsel, argued in his § 2255 motion that (1) the government breached its deals with him and the other two individuals, (2) his guilty plea was not knowing and voluntary, and (3) Friedlander and Gambino rendered ineffective assistance. The district court denied Thompson's motion and refused to grant a certificate of appealability, concluding that he failed to support his allegations with evidence sufficient to require an evidentiary hearing, let alone a grant of relief. Specifically, the court reasoned that Thompson's guilty plea was knowing and voluntary because his claims about breached agreements and Friedlander's failure to explain the consequences of his plea

were belied by Thompson's assurance at the colloquy that no promises had induced his plea and the court's own explanation to Thompson of the sentencing process. Because Thompson could not establish that any agreements induced his plea, the court concluded, he also could not claim that Gambino rendered ineffective assistance by failing to address those alleged agreements at sentencing or on appeal. This court then granted a certificate of appealability inviting Thompson to address (1) whether his guilty plea was knowing and voluntary, and (2) whether Friedlander adequately explained the consequences of pleading guilty to a conspiracy.

## II. ANALYSIS

Thompson first cursorily argues that Friedlander was ineffective because he failed to investigate the "tentative" agreement Thompson's first attorney had been negotiating with the government. According to Thompson's own filings, however, Friedlander was aware of the negotiations between Thompson and the government. And, again according to Thompson, that agreement was never finalized and thus could not have induced his plea. *See Marby v. Johnson*, 467 U.S. 504, 510 (1984). Moreover, Thompson cannot now claim, this late in the game, that the agreement was final and binding on the government because he acknowledged under oath at the plea colloquy that no promises had been made to him to induce a plea. And "a motion that can succeed only if the defendant committed perjury at the plea proceedings may be rejected out of hand unless the defendant has a compelling explanation for the contradiction." *United States v. Peterson*, 414 F.3d 825, 827 (7th Cir. 2005); *see also United States v. Jones*, 381 F.3d 615, 619 (7th Cir. 2004).

Thompson's bald explanation—that he was simply con-
fused and did not realize that the term "promises" encom-
passed the oral agreement he allegedly reached with the
government—is insufficient to overcome the presumption of
veracity which attaches to Thompson's sworn assurances,
especially in light of his subsequent filings in his criminal case.
*See Hutchings v. United States*, 618 F.3d 693, 697–699 (7th Cir.
2010). He never moved to withdraw his guilty plea, nor did he
mention any deals in his various opportunities to address the
district court directly. He did attempt to file a brief on appeal
in the hopes of striking his attorney's brief and proceeding
pro se. But, contrary to Thompson's current representations,
even that voluminous filing, and for that matter his pro se
petition for rehearing, never addresses any deal with the
government.

Thompson next argues that Friedlander was ineffective
because his inadequate advice about the sentencing conse-
quences of the "blind plea" led Thompson to believe that by
pleading only to selling cocaine and heroin to Jehan and Coates
he could avoid responsibility for the other drugs in the
conspiracy, as well as for the use of guns and his leadership
role as a "king" of the Black Disciples. He contends that, had
Friedlander effectively explained that the government could
still seek to enhance his Sentencing Guidelines range based on
facts he did not admit to during his plea colloquy, he would
have proceeded to trial or agreed to the written plea agreement
proposed by the government.

To succeed on his ineffective assistance claim Thompson
must show deficient performance; namely, that Friedlander
grossly mischaracterized the sentencing consequences of

pleading guilty to conspiracy. *See Julian v. Bartley*, 495 F.3d 487, 496–97 (7th Cir. 2007); *United States v. Cieslowski*, 410 F.3d 353, 358-59 (7th Cir. 2005). Thompson admits, however, that Friedlander urged him to accept the written plea agreement, and Friedlander stated at the hearing that by not signing the written agreement and proceeding with a blind plea, Thompson was acting "against his advice." Even if Friedlander's advice somehow led Thompson to believe that he could effectively cabin his sentence by admitting to a limited factual basis, Thompson cannot demonstrate the requisite prejudice to succeed on his ineffective assistance claim because his evidence does not show that, but for Friedlander's failings, he would have accepted the written plea agreement, *see Missouri v. Frye*, —— U.S. ——, 132 S. Ct. 1399, 1409 (2012), or proceeded to trial, *see Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

First, Thompson cannot show that, had Friedlander better advised him, he would have pleaded guilty pursuant to the written plea agreement. During his plea hearing, Thompson emphatically refused to admit to the factual basis of the agreement. And he cannot show prejudice because, even now, he refuses to acknowledge his full culpability as would be required under the plea offer. *See United States v. Parker*, 609 F.3d 891, 895 (7th Cir. 2010).

Second, Thompson cannot show that Friedlander's alleged failure to clarify the sentencing consequences of pleading guilty to conspiracy was a "decisive factor" in his decision to forgo trial because the district court's explanation of the sentencing process at Thompson's plea colloquy removed any possible prejudice of Friedlander's advice. *See Wyatt v. United States*, 574 F.3d 455, 458–59 (7th Cir. 2009); *Bethel v. United*

*States*, 458 F.3d 711, 718–20 (7th Cir. 2006). Thompson relies repeatedly on Friedlander's statement at the colloquy that "Mr. Thompson's understanding of what a conspiracy is … and what the law's theory is, are two different things." But he completely ignores the district court's numerous efforts during his plea hearing to cure that discrepancy.

The district court, in direct response to Thompson's continued refusal to admit to the entire factual basis of the proposed plea agreement, explained that the government would try to increase Thompson's sentence by presenting evidence at his sentencing hearing about the drug quantities and guns involved in the conspiracy as well as his role in the offense. Moreover, the court also informed Thompson that it would have the final say over the length of his sentence and that, regardless of the limits of his plea, he faced a statutory minimum of 10 years' imprisonment and a statutory maximum of life. The government also made clear its intention to prove those additional facts at sentencing. And Friedlander asserted, and Thompson agreed, that Thompson understood the preponderance standard that would apply to the government's efforts to prove aggravating factors at sentencing. Finally, Thompson himself demonstrated an understanding of the sentencing process, noting that issues about his use of guns would be addressed during sentencing. Friedlander cannot be blamed for Thompson's willful ignorance in the face of these robust warnings, or be said to have prejudiced him. *See Wyatt*, 574 F.3d at 458–59; *Bethel*, 458 F.3d at 718–20. And Friedlander could do little else to protect his client who insisted on admitting to at least some role in the charged drug conspiracy. *See Florida v. Nixon*, 543 U.S. 175, 187 (2004) (defendant has

final say over fundamental trial decisions including whether to plead guilty); *Ward v. Jenkins*, 613 F.3d 692, 699 (7th Cir. 2010) (same).

To the extent that Thompson's statement of facts and reply brief (but not the argument section of his opening brief) can be read to imply that he is also pursuing a claim that the government breached the deal it allegedly entered into with him during the recess of the plea hearing, that argument is waived. *See Reliable Money Order, Inc. v. McKnight Sales Co., Inc.*, 704 F.3d 489, 501 n.11 (7th Cir. 2013); *Fox v. Hayes*, 600 F.3d 819, 837–38 (7th Cir. 2010). The same is true of Thompson's contention that his admissions during the plea colloquy were insufficient to establish a factual basis for conspiracy, as Thompson waited until oral argument to explore the issue. *See Veluchamy v. F.D.I.C.*, 706 F.3d 810, 817 (7th Cir. 2013).

As the government notes, Thompson's remaining claims concerning Gambino's performance at sentencing and on appeal are beyond the scope of the certificate of appealability, which invited Thompson to address only (1) whether his guilty plea was knowing and voluntary, and (2) whether Friedlander and the court adequately explained the consequences of pleading guilty to a conspiracy. The additional claims, therefore, are not properly before this court. *See* 28 U.S.C. § 2253(c); *Bolton v. Akpore*, —— F.3d ——, 2013 WL 4840483, at *11 (7th Cir. Sept. 12, 2013). If Thompson were proceeding pro se, this court would construe his brief as an implicit request to amend the certificate, *see, e.g., Cosby v. Sigler*, 435 F.3d 702, 705 (7th Cir. 2006), but Thompson is represented by counsel, and a lawyer who wishes to raise claims that are outside the scope of the certificate of appealability "should not simply brief the

additional claims, but should first request permission to do so." *Lavin v. Rednour*, 641 F.3d 830, 832 (7th Cir. 2011). Thompson's attorney made no such request (even after seeing the government's argument), and so we will not consider the claims about Gambino.

### III.  CONCLUSION

Accordingly, we AFFIRM the judgment of the district court.