In the

# United States Court of Appeals
## For the Seventh Circuit

No. 15-2889

GILBERT SPILLER,

*Petitioner-Appellant,*

*v.*

UNITED STATES OF AMERICA,

*Respondent-Appellee.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 14 C 7821 — **Charles P. Kocoras**, *Judge.*

ARGUED APRIL 5, 2017 — DECIDED APRIL 28, 2017

Before WOOD, *Chief Judge*, and FLAUM and HAMILTON, *Circuit Judges*.

FLAUM, *Circuit Judge*. Gilbert Spiller pled guilty to drug and firearm charges. He later filed a petition under 28 U.S.C. § 2255, arguing that his counsel was constitutionally ineffective during the plea-bargaining process. The district court denied Spiller's petition without holding an evidentiary hearing. We affirm.

## I. Background

On July 13 and 21, 2011, Gilbert Spiller sold a total of 121 grams of crack cocaine for $5,000 to an undercover confidential informant. Spiller later sold a loaded .40 caliber handgun for $500 to the same informant, whom Spiller knew to be a felon who planned to use the gun to protect his drug operation from rival gang members. The government proceeded to charge Spiller with two counts of distributing a controlled substance, in violation of 21 U.S.C. § 841(a)(1) ("Counts One and Two"), and one count of selling a firearm to a felon, in violation of 18 U.S.C. § 922(d)(1) ("Count Three"). The government also filed a notice, pursuant to 21 U.S.C. § 851, that it would seek an enhanced mandatory minimum sentence based on Spiller's three prior drug felonies.

On July 30, 2012, the government sent Spiller's counsel a proposed plea agreement, under which Spiller would plead guilty to Count One and acknowledge that the conduct underlying Counts Two and Three was relevant for sentencing purposes, pursuant to U.S.S.G. § 1B1.3. Under the proposed agreement, Spiller would also stipulate to the government's Guidelines calculation, including a "career offender" enhancement pursuant to § 4B1.1.

Defense counsel responded to the government's proposal on August 8 with the following inquiry:

> Mr. Spiller has asked a great question and one
> that I cannot seem to answer for him: what ex-

actly does he gain if he proceeds by plea agreement, as opposed to a blind plea.[1] Is the government withdrawing the 851? Can you tell me one concession the government makes in the draft plea you sent over? I want to make sure I am not missing something.

That same day, the government responded, in relevant part:

The government is not withdrawing the 851 notice. You ask a good question, and I admit that the plea agreement does not offer a whole lot beyond a blind plea. There are a few minor benefits: we would dismiss two counts so he would save himself $200 in special assessments. He also gets the recognition in the plea agreement that, as things currently stand, he is entitled to acceptance of responsibility ….

Spiller rejected the government's proposed plea agreement and, instead, executed a blind plea. In relevant part, Spiller pled guilty to all three counts and "expressly reserve[d] the right to disagree with the government's guidelines calculation."

At Spiller's sentencing hearing on February 27, 2013, the parties did not dispute that Spiller's Guidelines range was 262 to 327 months' imprisonment—accounting for Spiller's conduct, his status as a career offender, and his acceptance of responsibility. While the government sought a sentence within the Guidelines range, however, defense counsel sought the

[1] A "blind plea" is a "guilty plea made without the promise of a concession from either the judge or the prosecutor." *Blind Plea*, BLACK'S LAW DICTIONARY (10th ed. 2014).

120-month mandatory minimum, highlighting the well-known crack-cocaine disparity and Spiller's troubled upbringing. Ultimately, the district court sentenced Spiller to 240 months' imprisonment, and we affirmed on appeal. *United States v. Spiller*, 732 F.3d 767 (7th Cir. 2013).

On October 6, 2014, Spiller filed a *pro se* petition under 28 U.S.C. § 2255, contending, in relevant part, that his attorney had been constitutionally ineffective by counseling him to execute a blind plea rather than the government's proposed plea agreement. The district court denied Spiller's petition, without holding an evidentiary hearing, and denied him a certificate of appealability. We granted it, however, and this appeal followed.

## II. Discussion

"When reviewing the denial of a federal prisoner's § 2255 petition, we review the district court's legal conclusions *de novo*, its factual findings for clear error, and its decision to forgo holding an evidentiary hearing for abuse of discretion." *Martin v. United States*, 789 F.3d 703, 705–06 (7th Cir. 2015) (citing *Osagiede v. United States*, 543 F.3d 399, 408 (7th Cir. 2008)). "The district court's decision must strike us as fundamentally wrong for an abuse of discretion to occur." *Williams v. Chi. Bd. of Educ.*, 155 F.3d 853, 857 (7th Cir. 1998) (citation omitted).

Spiller argues that the district court abused its discretion by denying his petition without holding an evidentiary hearing. "The petitioner's burden for receiving an evidentiary hearing is relatively light …." *Torres-Chavez v. United States*, 828 F.3d 582, 586 (7th Cir. 2016) (citation omitted). A district court must grant a hearing if the petitioner alleges facts that, if proven, would entitle him to relief. *Martin*, 789 F.3d at 706

(citation omitted). "It is well-established," however, "that a district court need not grant an evidentiary hearing in all § 2255 cases." *Id.* For instance, a hearing is not required if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). Additionally, if the record contains sufficient facts to explain counsel's actions as "tactical," generally no hearing is required. *See Osagiede*, 543 F.3d at 408 (citation omitted). Finally, a hearing is unnecessary if the petitioner makes allegations that are "vague, conclusory, or palpably incredible," rather than "detailed and specific." *Martin*, 789 F.3d at 706 (quoting *Kafo v. United States*, 467 F.3d 1063, 1067 (7th Cir. 2006)).

Spiller alleged below that his lawyer was constitutionally ineffective for failing to investigate the facts and law relevant to his case, and for giving "deficient" advice regarding his plea options.[2] The Sixth Amendment provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right to … have the Assistance of Counsel for his defence." U.S. Const. amend. VI. This right extends to the plea-bargaining process.

---

[2] At the outset, the district court concluded that the government's proposed plea agreement was not a formal plea offer, but merely a draft agreement, as it did not have a "fixed expiration date." Thus, concluded the district court, all of Spiller's arguments regarding his counsel's ineffective assistance at the plea-bargaining stage were inapposite. The court then addressed the merits of Spiller's ineffective-assistance claim, however, and determined that defense counsel's performance was not deficient and did not prejudice him. Spiller stresses that there is no "fixed expiration date" requirement, making the district court's initial ruling a legal error that warrants remand. Even assuming this ruling was incorrect, it constitutes harmless error in light of the court's subsequent rulings on the merits. *See Citizens for Appropriate Rural Roads v. Foxx*, 815 F.3d 1068, 1079 (7th Cir. 2016) ("An error is harmless if it does not affect a party's substantial rights.") (citation omitted).

*Martin*, 789 F.3d at 706 (citing *Lafler v. Cooper*, 566 U.S. 156, 162
(2012)); *see also Missouri v. Frye*, 566 U.S. 133, 140–42 (2012). To
demonstrate that his lawyer was constitutionally ineffective,
Spiller must "satisfy the familiar two-prong test set forth in
*Strickland v. Washington*." *Makiel v. Butler*, 782 F.3d 882, 897
(7th Cir. 2015) (citing *Strickland*, 466 U.S. 668 (1984)). First,
Spiller must show that his counsel's performance fell below
an objective standard of reasonableness. *Strickland*, 466 U.S. at
687–88. Second, he must show that counsel's deficient perfor-
mance prejudiced the defense, which means there is a reason-
able probability that, but for counsel's unprofessional errors,
the result of the proceeding would have been different. *Id*. at
691–92, 694. "When applying *Strickland* to the facts of a par-
ticular case, 'there is no reason for a court … to approach the
inquiry in the same order or even to address both components
of the inquiry if the defendant makes an insufficient showing
on one.'" *McDaniel v. Polley*, 847 F.3d 887, 893 (7th Cir. 2017)
(quoting *Strickland*, 466 U.S. at 697) (alteration in original).

Here, we need go no further than *Strickland*'s performance
prong. In the plea-bargaining context, "we have noted that a
reasonably competent lawyer will attempt to learn all of the
relevant facts of the case, make an estimate of a likely sen-
tence, and communicate the results of that analysis to the cli-
ent before allowing the client to plead guilty." *Bethel v. United
States*, 458 F.3d 711, 717 (7th Cir. 2006) (citing cases). The rec-
ord, taken as a whole, demonstrates that Spiller's counsel did
just that.

First, as reflected in her inquiry to the government, de-
fense counsel discussed the proposed plea agreement with
Spiller. His attorney then considered the government's pro-
posal and emails and determined that Spiller would be better

off pleading blindly. According to Spiller's affidavit, which he attached to his petition, his lawyer recommended that he execute a blind plea declaration, explaining to him that he would "get a better sentence with pleading blindly" and that a blind plea would "get [him] a better deal [and] is more favorable than the government's offer." The resulting plea declaration distinguishes this case from others where attorneys have advised clients to *not* plead guilty. In those instances, there may be a natural gap in the record: The attorney recommends that the client reject the government's offer, and the client proceeds to trial. Here, Spiller *did* plead guilty, and his counsel drafted an eleven-page plea declaration illustrating her and Spiller's understanding of the relevant facts and law underlying the case. Indeed, the signed agreement states, in relevant part:

> Defendant GILBERT SPILLER, after extensive consultation with his attorney, … acknowledges and states the following: … Mr. Spiller has read the charges against him contained in the indictment, and those charges have been fully explained to him by his attorney. Mr. Spiller fully understands the nature and elements of the crimes with which he has been charged….Mr. Spiller agrees that this Plea Declaration shall be filed and become part of the record of the case….Mr. Spiller further acknowledges that he has read this Plea Declaration and carefully reviewed each provision with his attorney.

When assessed in its entirety, the record conclusively shows that defense counsel discussed with Spiller his case and plea options and advised him accordingly. This is constitutionally

sufficient. Consequently, the district court did not abuse its discretion by concluding, without an evidentiary hearing, that Spiller was not entitled to relief.

Spiller stresses the lack of evidence that his attorney investigated the *differences* between the two plea options, arguing that the district court simply presumed that defense counsel's decision was tactical. Again, however, the record shows otherwise. Contrary to Spiller's assertion, counsel's email to the government evidences the very research he complains was lacking: His attorney reviewed Spiller's plea options, specifically inquired of the government whether there were differences, examined the government's response, and suggested that Spiller plead blindly. Further, the government conceded to Spiller's lawyer that its proposal did not "offer a whole lot beyond a blind plea." So, according to Spiller's signed plea declaration and affidavit, defense counsel reserved Spiller's right to challenge the government's Guidelines calculation—a right he otherwise would have sacrificed under the government's proposal—and believed that she could secure him a "better sentence." In all, the record was sufficient to explain counsel's decision as strategic, thereby eliminating the need for an evidentiary hearing. *See Osagiede*, 543 F.3d at 408 (citation omitted).

Spiller takes issue with his attorney's strategy for two reasons—neither of which is convincing. First, he relies on *Toro v. Fairman*, 940 F.2d 1065 (7th Cir. 1991), in questioning whether it was reasonable for defense counsel to believe that challenging the government's Guidelines calculation would have been successful. In *Toro*, however, "counsel admitted that the decision to proceed to trial was not so much a rational, professional judgment, but an emotional one." *Id*. at 1068. Not so

here: Spiller's lawyer believed she could secure her client a better sentence and reserved certain arguments to do just that. This sounds in strategy rather than in emotion, and a "strategic decision, even if clearly wrong in retrospect, cannot support a claim that counsel's conduct was deficient," *United States v. Yancey*, 827 F.2d 83, 90 (7th Cir. 1987) (citing *Strickland*, 466 U.S. at 689–91). Second, Spiller highlights that defense counsel did not, in fact, end up challenging the government's calculation; but he does not point to any authority for the proposition that an attorney must adhere to an initial decision throughout a case for that decision to qualify as tactical. Rather, we analyze whether that attorney's decision is strategic at the time she makes it. *Strickland*, 466 U.S. at 689 ("A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."). This is especially so in the plea-bargaining context. *See Bethel*, 458 F.3d at 717 (highlighting "the many uncertainties surrounding the difficult decision of whether to plead guilty" (citing *McMann v. Richardson*, 397 U.S. 759, 769–70 (1970))).

Lastly, Spiller's reliance on *Moore v. Bryant*, 348 F.3d 238 (7th Cir. 2003), and *Jones v. Calloway*, 842 F.3d 454 (7th Cir. 2016), is misplaced. In *Moore*, we focused on "inaccurate advice," such as advice that "goodtime credits could severely lengthen [a] sentence if [the client] proceeded to trial and lost." 348 F.3d at 241–42. Here, Spiller's only argument resembling a claim of inaccurate advice was that defense counsel informed him that he would receive a more favorable sentence if he pled blindly. We have clarified, though, that "[a]n inaccurate prediction of a sentence alone is not enough to

meet the [*Strickland*] standard." *Bethel*, 458 F.3d at 717 (citations omitted). Additionally, in *Jones*, we held that the trial court had misapplied *Strickland* in finding that a defense attorney's failure to call a particular witness constituted a strategic decision, in part because "the state appellate court had no basis in the record to classify counsel's failure to call [the witness] as a strategic trial choice." 842 F.3d at 464. Here, however, the district court *did* have a sufficient basis in the record to characterize counsel's decision as strategic: Her email, Spiller's affidavit, the government's proposed plea agreement, and Spiller's Plea Declaration, taken together, obviated the need for an evidentiary hearing.

### III. Conclusion

For the foregoing reasons, we AFFIRM the judgment of the district court.