# FOR PUBLICATION

ATTORNEY FOR APPELLANT:

**RYAN P. DILLON**
Law Office of Ryan P. Dillon, P.C.
Franklin, Indiana

ATTORNEY FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**BRIAN REITZ**
Deputy Attorney General
Indianapolis, Indiana



FILED
Jul 27 2012, 9:39 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JOHN CHERRY, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 55A01-1112-CR-585 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MORGAN SUPERIOR COURT
The Honorable Jane Spencer Craney, Judge
Cause No. 55D03-1105-FB-582

**July 27, 2012**

**OPINION- FOR PUBLICATION**

**BRADFORD, Judge**

Appellant-Defendant John Cherry appeals from his convictions of and sentences for Class B felony Aiding, Inducing, or Causing Dealing in Heroin[1] and Class D felony Unlawful Possession of a Syringe.[2]  As restated, Cherry contends that the trial court abused its discretion in admitting certain evidence, the State failed to produce sufficient evidence to sustain his convictions, the trial court abused its discretion in denying his mistrial motion, and his sentence is inappropriately harsh.  We affirm.

**FACTS AND PROCEDURAL HISTORY**

On May 24, 2011, Morgan County Sheriff's Deputy Larry Sanders learned from a confidential informant ("CI") that Austin Quick, from whom the CI had previously purchased heroin, was presently dealing in heroin.  Detective Sanders contacted Detective Brian Chambers and Sergeant John Richards of the Martinsville Police Department to assist in a controlled drug buy.  Quick was riding in a truck with Cherry, driver Cheyne Smith, Angela Montgomery, and Brenda Loy when he received a telephone call, whereupon he asked Smith to drive to an alley where the controlled buy was to occur.

When the truck arrived at the meeting location, Quick and Cherry noticed police in the area, and Quick told Smith to keep driving.  Before police pulled the truck over, Quick ingested two "balloons" that contained "tar" heroin. Tr. pp. 155, 156.  From along the path traveled by the truck, Martinsville Police Detective Timothy Foley recovered two syringes

---

[1]  Ind. Code §§ 35-41-2-4 (2010); 35-48-4-1(a)(2)(C) (2010).

[2]  Ind. Code § 16-42-19-18 (2010).

2

and a spoon with residue wrapped in a string or rope. Heroin in tar form is heated until liquid for injection, a process "[a] lot of people" carry out using a spoon. Tr. p. 79.

Detective Chambers stopped the truck after a short chase, its occupants were removed, and Detective Sanders began obtaining information from them. While Detective Sanders was speaking to Montgomery, Cherry asked to speak with him. Cherry told Detective Sanders that Quick was "not the person that [he] wanted" and that "[h]e was the person supplying the heroin." Tr. p. 70. Cherry repeated the statement after Detective Sanders called another police officer over. Sergeant Richards recovered a syringe from Cherry's right front pants pocket, and Cherry was transported to the Morgan County Sheriff's Department. Detective Sanders proceeded to question Cherry, who told Detective Sanders that Quick was dealing heroin and that he was supplying it to Quick. Cherry explained that he had stayed at a friend's house "right behind the Rural King" the night before, had received some money for scrap metal that morning, and had then driven to Indianapolis with Quick to purchase heroin. State's Ex. 3. Detective Sanders also interviewed Quick, who told him that he sold heroin for Cherry.

The State charged Cherry with two counts of Class B felony aiding, inducing, or causing dealing in heroin[3] and Class D felony unlawful possession of a syringe. At trial, the State's first witness testified that the balloons Quick had swallowed, and which were later recovered, contained heroin, and a laboratory report to that effect was entered into evidence. As is happened, however, the report was later withdrawn when the trial court ruled that the

---

[3] One count of aiding, inducing, or causing dealing in heroin was later dismissed.

State had failed to establish a sufficient chain of custody for the heroin. Cherry moved for a mistrial and then requested an admonition, and the trial court admonished the jury not to consider any evidence from the witness who had testified regarding the test results or the laboratory report. The jury found Cherry guilty as charged, and the trial court sentenced him to ten years of incarceration for aiding, inducing, or causing dealing in heroin, with two years suspended and to be followed by four years of probation, and a concurrent three years for Class D felony unlawful possession of a syringe.

## DISCUSSION AND DECISION

### I. Whether the Trial Court Abused its Discretion in Admitting Certain Evidence

The admissibility of evidence is within the sound discretion of the trial court. *Curley v. State*, 777 N.E.2d 58, 60 (Ind. Ct. App. 2002), *trans denied*. We will reverse a trial court's decision on the admissibility of evidence only upon a showing of an abuse of that discretion. *Id*. An abuse of discretion may occur if the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court, or if the court has misinterpreted the law. *Id*. The Court of Appeals may affirm the trial court's ruling if it is sustainable on any legal basis in the record, even though it was not the reason enunciated by the trial court. *Moore v. State*, 839 N.E.2d 178, 182 (Ind. Ct. App. 2005), *trans. denied*. We do not reweigh the evidence, and consider the evidence most favorable to the trial court's ruling. *Hirsey v. State*, 852 N.E.2d 1008, 1012 (Ind. Ct. App. 2006), *trans. denied*.

### A. Statements to Detective Sanders

Cherry contends that the trial court abused its discretion in admitting his videotaped

4

statement to Detective Sanders because any probative value is outweighed by its prejudicial effect and because the State had failed to previously establish a *corpus delicti* at trial.

### 1. Evidence Rule 403

Indiana Evidence Rule 403 provides: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." Cherry argues that the prejudicial effect of his admissions to acts unrelated to the events of May 24, 2011, only served to inflame the jury. Specifically, Cherry challenges his admission that he had driven with Quick to purchase heroin on previous occasions.

We cannot conclude that the trial court abused in discretion in this regard. First, we find the statement that Cherry and Quick had worked together in the past to be highly relevant to the question of Cherry's intent on May 24, 2011. Moreover, the record contains ample evidence from other sources that Cherry was helping Quick to deal heroin, including Cherry's statement to Detective Sanders at the scene that he was the person supplying the heroin and Quick's own statement to Detective Sanders that he sold heroin for Cherry. In light of the substantial evidence that Cherry and Quick were working together on May 24, 2011, we doubt the jury was much affected by evidence that the duo had worked together in the past. The trial court did not abuse its discretion in this regard.

### 2. *Corpus Delicti*

Cherry argues that his videotaped statement was inadmissible because the State had

5

not yet established a *corpus delicti* for the aiding, inducing, or causing heroin dealing charge when it was admitted. "Proof of the *corpus delicti* means proof that the specific crime charged has actually been committed by someone." *Taylor v. State*, 236 Ind. 415, 421, 140 N.E.2d 104, 108 (1957).

> For a confession to be admitted into evidence, the State must establish the corpus delicti. *Rickey v. State*, 661 N.E.2d 18, 23 (Ind. Ct. App. 1996), *trans. denied*. The purpose for requiring proof of the corpus delicti is to prevent the admission of a defendant's confession to a crime that never occurred. *Hurt v. State*, 570 N.E.2d 16, 19 (Ind. 1991). The State is not required to prove the corpus delicti beyond a reasonable doubt, but must present independent evidence from which an inference may be drawn that a crime was committed. *Douglas v. State*, 481 N.E.2d 107, 110 (Ind. 1985). The corpus delicti need not be established prior to admission of the confession so long as the totality of independent evidence presented at trial establishes it. *Morgan v. State*, 544 N.E.2d 143, 146 (Ind. 1989). The corpus delicti may be established by circumstantial evidence. *Grey v. State*, 273 Ind. 439, 442, 404 N.E.2d 1348, 1350 (1980).

*Weida v. State*, 693 N.E.2d 598, 600 (Ind. Ct. App. 1998), *trans. denied*. Regardless of the order of the presentation of evidence, the totality of the evidence apart from Cherry's confession, specifically Quick's admission and the fact that the truck reported as instructed for a controlled drug buy, established that a crime was committed. The trial court did not abuse its discretion in admitting Cherry's videotaped statement.

### B. Syringes Found Near the Truck's Route

Cherry contends that the trial court abused its discretion in admitting the syringes found near the truck's route following the traffic stop. Cherry has, however, waived this argument for appellate consideration. Although Cherry initially objected to the admission of the syringes, he did not object when they were actually admitted into evidence. The purpose

6

of the contemporaneous objection rule is to promote a fair trial by preventing a party from sitting idly by and appearing to assent to an offer of evidence or ruling by the court only to cry foul when the outcome goes against him. *Purifoy v. State*, 821 N.E.2d 409, 412 (Ind. Ct. App. 2005), *trans. denied* (citation omitted). "The rule requires parties to voice objections in time so that harmful error may be avoided or corrected and a fair and proper verdict will be secured." *Id*. Because Cherry did not object to the admission of the syringes found by the road, he has waived the issue on appeal.

## II. Whether the State Produced Sufficient Evidence to Sustain Cherry's Convictions

Our standard of review for challenges to the sufficiency of the evidence supporting a criminal conviction is well-settled:

> In reviewing a sufficiency of the evidence claim, the Court neither reweighs the evidence nor assesses the credibility of the witnesses. We look to the evidence most favorable to the [finding of guilt] and reasonable inferences drawn therefrom. We will affirm the conviction if there is probative evidence from which a reasonable [finder of fact] could have found Defendant guilty beyond a reasonable doubt.

*Vitek v. State*, 750 N.E.2d 346, 352 (Ind. 2001) (citations omitted).

### A. Aiding, Inducing, or Causing Heroin Dealing

In order to convict Cherry of aiding, inducing, or causing heroin dealing, the State was required to establish that he aided, induced, or caused Quick to possess, with intent to deliver, heroin. Ind. Code §§ 35-41-2-4; 35-48-4-1(a)(2)(C). Cherry argues that the State produced insufficient evidence to establish that the substance in the balloons Quick swallowed was actually heroin. While it is true that neither the substance nor direct evidence

7

of the substance's identity was admitted at trial, "[t]he State is not required to introduce the subject contraband to obtain a conviction for dealing or possession." *Helton v. State*, 907 N.E.2d 1020, 1024 (Ind. 2009) (citations omitted). "The identity and quantity of a controlled substance, and the defendant's possession of or dealing in narcotics, may all be established through witness testimony and circumstantial evidence." *Id*. (citations omitted). "The exclusion of the seized items [does not foreclose] prosecution and conviction based on other evidence." *Id*.

The State produced sufficient circumstantial evidence to establish that Quick possessed heroin. At the very least, Quick testified that he swallowed two balloons of tar heroin in his possession, and Cherry testified that all five persons in the truck were "hard-core junkies[.]" Tr. p. 215. The jury was entitled to conclude from this testimony that Quick knew how to identify heroin and that the substance he possessed was, in fact, heroin, despite the lack of test results to that effect. Moreover, Quick admitted to police that he sold heroin for Cherry, and Cherry admitted to police that he supplied Quick with heroin. The jury was entitled to find from this evidence that Quick had obtained the heroin from Cherry and that Quick intended to deal it. The State produced sufficient evidence to sustain Cherry's conviction for aiding, inducing, or causing heroin dealing.

### B. Unlawful Possession of a Syringe

In order to convict Cherry of unlawful possession of a syringe, the State was required to establish that he "possess[ed] or ha[d] under control with intent to violate [the Indiana Legend Drug Act] a hypodermic syringe or needle or an instrument adapted for the use of a

legend drug by injection in a human being." Ind. Code § 16-42-19-18; *see also* Ind. Code § 16-42-19-13 (2011) ("A person may not possess or use a legend drug or a precursor unless the person obtains the drug … on the prescription or drug order of a practitioner; … in accordance with section 11(2) or 21 of this chapter; or … in accordance with rules adopted by the board of pharmacy under IC 25-26-23."). The hypodermic syringe was found in Cherry's pocket, and Cherry testified that he had "been a hard-core junkie for about five years" and that "most of the time I have paraphernalia on me." Tr. pp. 214-15. Cherry also testified that he usually took heroin by injecting it with a syringe. The jury was entitled to conclude that Cherry possessed the syringe found in his pocket with the intent to use it to inject heroin in violation of the Indiana Legend Drug Act. The State produced sufficient evidence to sustain both of Cherry's convictions.

### III.  Whether the Trial Court Abused its Discretion in Denying Cherry's Mistrial Motion

Cherry contends that the trial court abused its discretion in denying his mistrial motion, which was made after the trial court withdrew the laboratory report indicating that the substance Quick had injected was heroin.

> We review a trial court's decision to deny a mistrial for abuse of discretion because the trial court is in "the best position to gauge the surrounding circumstances of an event and its impact on the jury." *McManus v. State*, 814 N.E.2d 253, 260 (Ind. 2004). A mistrial is appropriate only when the questioned conduct is "so prejudicial and inflammatory that [the defendant] was placed in a position of grave peril to which he should not have been subjected." *Mickens v. State*, 742 N.E.2d 927, 929 (Ind. 2001) (quoting *Gregory v. State*, 540 N.E.2d 585, 589 (Ind. 1989)). The gravity of the peril is measured by the conduct's probable persuasive effect on the jury. *Id*.

*Pittman v. State*, 885 N.E.2d 1246, 1255 (Ind. 2008).

> When faced with a circumstance that a defendant believes might warrant mistrial,
>
> [g]enerally, the correct procedure is to request an admonishment. *See Brown v. State*, 572 N.E.2d 496, 498 (Ind. 1991). However, if counsel is not satisfied with the admonishment or it is obvious that the admonishment will not be sufficient to cure the error, counsel may then move for a mistrial. *See Dresser v. State*, 454 N.E.2d 406, 407-08 (Ind. 1983). [A] failure to request an admonishment or move for a mistrial results in waiver of the issue. *See Robinson v. State*, 693 N.E.2d 548, 552 (Ind. 1998).

*Etienne v. State*, 716 N.E.2d 457, 461 (Ind. 1999).

Here, Cherry moved for a mistrial and then requested an admonition, which the trial court then gave. "[W]here the trial court adequately admonishes a jury, an admonishment is presumed to cure any error that may have occurred." *Emerson v. State*, 952 N.E.2d 832, 840 (Ind. Ct. App. 2011) *trans. denied*. We conclude that the trial court adequately admonished the jury and that Cherry has failed to rebut the presumption that this cured any error that might have occurred. The trial court admonished the jury to disregard any testimony from the sponsor of the laboratory report and removed the report itself from evidence. Moreover, the jury was told in preliminary and final instructions that it should not consider testimony or evidence that was not admitted or stricken from the record. Cherry points to no indication in the record to indicate that the jury failed to take the instructions and admonition to heart, and our review reveals none. Because Cherry offers nothing but conclusory statements that the admonition was ineffective, he has failed to establish that the trial court abused its discretion in denying his mistrial motion.

### IV. Whether Cherry's Sentence is Inappropriate

We "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Ind. Appellate Rule 7(B). "Although appellate review of sentences must give due consideration to the trial court's sentence because of the special expertise of the trial bench in making sentencing decisions, Appellate Rule 7(B) is an authorization to revise sentences when certain broad conditions are satisfied." *Shouse v. State*, 849 N.E.2d 650, 660 (Ind. Ct. App. 2006), *trans. denied* (citations and quotation marks omitted). As previously mentioned, the trial court sentenced Cherry to an aggregate sentence of ten years of incarceration, with two years suspended and four years of probation.

The nature of Cherry's offense is not as egregious if looked at as an isolated incident. It was, however, merely one incident of many in what appears to have been a drug-dealing operation of some scope and duration. Cherry admitted to buying and delivering heroin on a regular basis, making up to three runs to Indianapolis daily to purchase more product from the Mexican Mafia. Cherry was an admitted conduit for heroin infiltration in Martinsville. The nature of Cherry's offense justifies his sentence.

As for Cherry's character, it is that of an admitted long-term polysubstance abuser and drug dealer, who has made only cursory attempts at rehabilitation. Cherry has one prior conviction, for assisting a criminal, and, as of sentencing had pending misdemeanor charges in Georgia and pending drug-related felony charges in Indiana, for which he was out on bond when he committed the instant offenses. Cherry had been written-up twice during a previous incarceration and was written up three times while incarcerated awaiting sentence in this

11

case.  Cherry, who was thirty-one at sentencing, admitted to using Xanax and heroin daily since the age of twenty-five and has also admitted to using marijuana, mushrooms, cocaine, Valium, and Morphine.  Despite his history of substance abuse, Cherry has participated in only one inpatient treatment program.  As with the nature of his offenses, Cherry's character fully justifies his sentence.  Cherry has failed to establish that his sentence is inappropriate.

We affirm the judgment of the trial court.

VAIDIK, J., concurs in part and dissents in part.

CRONE, J., concurs.

# IN THE

# COURT OF APPEALS OF INDIANA

JOHN CHERRY,                          )
                                      )
    Appellant-Defendant,          )
                                      )
        vs.                   )     No. 55A01-1112-CR-585
                                      )
STATE OF INDIANA,                     )
                                      )
    Appellee-Plaintiff.           )
                                      )

**VAIDIK, Judge, dissenting in part and concurring in part.**

I respectfully dissent from the majority's conclusion that the evidence is sufficient to support Cherry's conviction for Class B felony aiding, inducing, or causing dealing in heroin. Because I believe that the evidence is insufficient to prove that the substance in the balloons that Quick swallowed was actually heroin, I would reverse Cherry's conviction.

The identity of a drug is an essential element of a crime that the State must prove beyond a reasonable doubt. As our Supreme Court has explained, the identity of a drug "has long been a metaphysical cornerstone of our criminal law." *Slettvet v. State*, 258 Ind. 312, 280 N.E.2d 806, 809 (1972). Generally, the identity of a drug is proven by expert testimony based on chemical analysis. There have been cases, however, where circumstantial evidence

13

has been used to prove the identity of a drug. *Clifton v. State*, 499 N.E.2d 256, 258 (Ind. 1986). For example, in the absence of chemical analysis, police officers, based on their specialized training, can identify a drug. *See Halsema v. State*, 823 N.E.2d 668, 673 n.1 (Ind. 2005) ("Here, investigating officer Troy Harris testified that he received special training concerning the production, manufacture, and distribution of methamphetamine. The officer explained that the drug is highly addictive, that it can be produced from various household items, and he described the various methods of ingestion. When asked to identify State's Exhibit # 30, the contents of a plastic evidence bag containing items retrieved from the bedroom dresser drawer, Officer Harris testified, 'it's methamphetamine.' This testimony was sufficient [even in the absence of expert testimony based on chemical analysis]." (citations omitted)); *see also Doolin v. State*, 2012 WL 2874387, *4 (Ind. Ct. App. July 16, 2012) (concluding that the police officer's experience, training, and personal observations, along with "other circumstantial evidence," "sufficiently established the identity of the substance as marijuana"). Also in the absence of chemical analysis, someone sufficiently experienced with drugs, such as a drug addict, may testify that the substance is indeed a dangerous drug. 28A C.J.S. *Drugs and Narcotics* § 415 (2008); *see also Clifton*, 499 N.E.2d at 258. In those cases, the testimony of long-time addicts that their physiological and psychological reactions after the use of a particular substance was the same as they had previously experienced from the use of narcotics will sustain a finding that the substance used by such addicts in fact contained a narcotic drug. 28A C.J.S. at § 415.

Neither, however, happened in this case. Although the lab report was initially

14

admitted into evidence, the trial court later withdrew it because of chain-of-custody problems for the heroin. Quick testified at trial that the substance in the balloons was tar heroin. Tr. p. 155-56, 158. Tar heroin is usually packaged in balloons. *Id.* at 78. When asked how he knew it was heroin, Quick responded because he "purchased" it from a dealer in Indianapolis and was "told" that it was heroin. *Id.* at 158, 177. Quick admitted, however, that he did not know what was inside the balloons because he never opened them either before or after they passed through his digestive system at the hospital. *Id.* at 158-59. Quick explained that on at least one occasion when he bought from this same dealer, he was told that it was heroin, but it was not. *Id.* at 188.

As the majority points out, Cherry admitted to police that he supplied heroin to Quick. Regardless of this fact, Cherry testified at trial that he did not know that Quick had heroin on him that particular day, and Cherry never admitted that the substance in the balloons that Quick swallowed was heroin. Simply put, there was no testimony in this case of someone sufficiently experienced with the drug indicating that the substance in the balloons was indeed a dangerous drug. *See Halsema*, 823 N.E.2d at 673 n.1; *Slettvet*, 280 N.E.2d at 808. No police officer identified the substance in the balloons as heroin. And even though Quick and Cherry may have been hard-core heroin junkies, because Quick and Cherry never tested or even saw the substance in the balloons, there was no testimony in this case that the substance in the balloons was actually heroin. I would therefore reverse Cherry's conviction for Class B felony aiding, inducing, or causing dealing in heroin. I otherwise concur with the majority as to Cherry's conviction and sentence for Class D felony unlawful possession of a

15

syringe.