In the

# United States Court of Appeals

## For the Seventh Circuit

No. 16-3050

LEEANN BROCK-MILLER,

*Petitioner-Appellant,*

*v.*

UNITED STATES OF AMERICA,

*Respondent-Appellee.*

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 1:15-cv-01646-SEB-TAB— **Sarah Evans Barker**, *Judge.*

ARGUED JANUARY 5, 2018 — DECIDED APRIL 3, 2018

Before KANNE, ROVNER, and HAMILTON, *Circuit Judges.*

ROVNER, *Circuit Judge.* LeeAnn Brock-Miller pled guilty, pursuant to a plea agreement, to one count of conspiracy to possess with intent to distribute heroin. She received the agreed-upon sentence of ten years' imprisonment and eight years of supervised release. She then brought a timely motion under 28 U.S.C. § 2255 to challenge her conviction, asserting ineffective assistance of counsel during plea negotiations. The

district court declined to hold a hearing, concluded that counsel's performance was not deficient and denied the motion. We reverse and remand for a hearing on Brock-Miller's section 2255 motion.

## I.

Brock-Miller was one of forty defendants charged with various drug crimes in a twenty-six count indictment. Brock-Miller was charged only in Count Six of the August 2012 indictment, with conspiracy to possess with intent to distribute more than one kilogram of heroin in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(i) and 846. According to the indictment, the conspiracy was led by Oscar Perez and Justin Addler, inmates in the Indiana Department of Corrections who used illicit cell phones to oversee the acquisition of large amounts of heroin from a source in Chicago and then facilitate the distribution of that heroin into southern Indiana via couriers. The conspiracy began in approximately June 2011 and continued through August 2012. In the twenty-eight paragraph "Overt Acts" section of Count Six, Brock-Miller[1] is mentioned just once, in paragraph twenty-seven:

> On or about July 13, 2012, after a series of telephone calls with JUSTIN ADDLER, BRIAN MOORE, LEEANN BROCK, and JOSHUA MILLER were in possession of $6,000 of JUSTIN ADDLER'S money, traveling on I-65 to Chicago to obtain a large quantity of heroin. During the trip, MILLER noticed law

---

[1] Brock-Miller was indicted under the name LeeAnn Brock, but proceeds in this action under her married name, Brock-Miller.

enforcement agents conducting surveillance and began driving erratically in an attempt to avoid detection. MOORE subsequently threw the $6,000 out the window of the vehicle.

At the going rate of $110 per gram, $6,000 would have purchased approximately fifty-four grams of heroin. Miller and another man subsequently recovered the $6,000. As Brock-Miller later told the sentencing judge, this car trip was an isolated incident, where she agreed to give the others a ride in exchange for one gram of heroin for herself. Brock-Miller had an extensive criminal history that corroborated her claim that she did not sell drugs but was an addict who simply bought drugs for personal consumption.

More than a year after the grand jury returned the indictment charging Brock-Miller in Count Six, the government filed an information under 21 U.S.C. § 851(a) indicating that it intended to seek an enhanced penalty that is applicable to persons who commit a drug offense after a prior conviction for a felony drug offense has become final. *See also* 21 U.S.C. §§ 841(b)(1)(A) and (B) (authorizing recidivist enhancements). For Brock-Miller, this meant that the statutory minimum sentence for the charged drug quantity rose from ten years to twenty years, with the potential maximum remaining at life imprisonment. 21 U.S.C. § 841(b)(1)(A). The prior felony drug offense cited by the government was a 2008 Indiana conviction for "Unlawful Possession of Syringes or Needles," which the

government considered a qualifying felony drug offense under 21 U.S.C. § 802(44).[2]

Brock-Miller had in fact been convicted in 2008 for possession of syringes in violation of Indiana Code § 16-42-19-18 (2007). At that time, the Indiana law provided:

> A person may not possess or have under control with intent to violate this chapter a hypodermic syringe or needle or an instrument adapted for the use of a legend drug by injection in a human being.

The term "legend drug" referred to prescription drugs, *see infra*, and did not include controlled substances such as heroin. Brock-Miller's conviction under the 2007 version of the statute was later vacated, as we will discuss below, because the substance she was charged with injecting was heroin, which is not a legend drug and thus her conduct was not covered by the statute. The statute was later amended to include both legend drugs and controlled substances such as heroin, a change in the law that does not affect the outcome here but that helps explain an error in the district court's analysis in this case.

In any event, Brock-Miller's counsel objected to the section 851 information by contending that Brock-Miller did not have a conviction under Indiana Code § 35-48-4-8.3, which criminalizes the possession of drug paraphernalia. Counsel argued that first time offenses under the paraphernalia statute are considered misdemeanors and so the conviction could not be consid-

---

[2] Brock-Miller possessed the syringes in August 2007, and pled guilty in 2008. Thus, the 2007 version of the statute controlled. The statute was amended in 2015.

ered a felony drug offense for the purpose of enhancing the sentence under sections 841(b) and 851.[3] This was a frivolous and misdirected objection, though, for at least two reasons. First, Brock-Miller had never been convicted of possessing drug paraphernalia under section 35-48-4-8.3. And second, the government had not asserted a conviction under section 35-48-4-8.3 for possession of paraphernalia as the basis for the recidivist enhancement; it had cited Brock-Miller's conviction for Unlawful Possession of Syringes or Needles. Although the government did not specify the Indiana statute under which Brock-Miller had been convicted, the section 851 information listed the case number, date of conviction and county in which she was convicted. State records for the conviction indicate that Brock-Miller was charged under Indiana Code § 16-42-19-18, not § 35-48-4-8.3.

A check of Brock-Miller's record of conviction would have revealed the correct statutory cite, and a proper analysis would have confirmed that Brock-Miller had a meritorious objection to the recidivist enhancement, as we will discuss below. But her lawyer never raised a proper objection to the section 851 information and the district court never ruled on the frivolous objection that was filed. Brock-Miller, believing that she faced a mandatory minimum sentence of twenty years, pled guilty to conspiracy to possess with intent to distribute more than 100

---

[3] Sections 841(b)(1)(A) and (b)(1)(B) authorize the enhanced recidivist sentences at issue in this case, the former applying to larger quantities of heroin and the latter to smaller quantities. Section 851 provides the procedure for establishing that the enhancements apply. These statutes collectively are the basis for the recidivist enhancement at issue here.

grams of heroin, a smaller amount than was initially charged. She agreed to accept a sentence of ten years' imprisonment and eight years of supervised release, and gave up her right to file a direct appeal or a collateral challenge to her conviction and sentence.

At the change of plea hearing, there was considerable confusion regarding the sentencing range. The court first stated that the maximum sentence for Count Six was forty years. Counsel for the government interposed that the correct range was "ten to life." The court noted that Brock-Miller's petition to enter a plea of guilty showed a range of five to forty years. The government then agreed that five to forty years was the correct range and the court then repeated to Brock-Miller that the sentencing range was five to forty years. After reviewing the plea agreement itself, the court again asked for clarification because that document showed a sentencing range of ten years to life. Brock-Miller's appointed counsel told the court that her client pled guilty to a lesser amount of heroin than was initially charged and so the range for the lesser included count to which she was pleading was five to forty years. Government counsel agreed again that the sentencing range for the charge to which Brock-Miller was entering a plea was five to forty years. The court then told Brock-Miller that her sentencing range would have been ten years to life for the crime initially charged but that her plea agreement reduced the range to five to forty years. That was incorrect. For the kilogram quantity of heroin initially charged, the sentencing range was ten years to life without the recidivist enhancement and twenty years to life with the enhancement. For the reduced amount of heroin to which Brock-Miller pled guilty, the sentencing range was five

to forty years without the recidivist enhancement and ten years to life when the enhancement was included. At sentencing, the court noted for the first time that the plea agreement provided for a binding sentence of ten years, and that the correct statutory range for the lesser amount of heroin, together with the enhancement under sections 841(b) and 851, was ten years to life.[4] The court also gave Brock-Miller an eight-year term of supervised release to follow the ten-year term of imprisonment.

After sentencing, Brock-Miller filed and then quickly withdrew a timely *pro se* notice of appeal. She then filed a timely *pro se* motion for collateral relief under 28 U.S.C. § 2255. She alleged ineffective assistance of counsel in violation of the Sixth Amendment, and a denial of due process in violation of the Fifth Amendment. She dropped the latter claim on appeal and so we focus on her ineffective assistance claim only. In that claim, she alleged that her appointed counsel filed a frivolous objection to the government's section 851 filing, and made erroneous factual assertions in the objection. Brock-Miller asserted that she informed her lawyer of the error, but counsel failed to investigate or correct the error, and failed to seek a hearing on the objection. Brock-Miller also alleged that her lawyer inappropriately advised her to enter into a plea agreement that allowed her to be sentenced as a recidivist,

---

[4] The guidelines range was 92 to 115 months of imprisonment, a range which Brock-Miller asserts would now be 77 to 96 months based on the retroactive Amendment 782 to the sentencing guidelines. The mandatory minimum of ten years (120 months) for the crime to which Brock-Miller pled guilty made the guidelines calculation largely irrelevant.

without any proper objection to that enhancement and without seeking any determination by the court regarding whether the recidivist provision actually applied to her. Finally, Brock-Miller contended that her lawyer made the same error regarding the sentencing enhancement in objecting to the pre-sentence investigation report ("PSR"). Because the objections as filed were frivolous, Brock-Miller contended that the court overlooked the objections and failed to hold the necessary hearing to rule on the objections. Brock-Miller sought new counsel and a new sentencing hearing that included a ruling on whether the recidivist provision applied to her, as well as any other available relief.

The district court denied Brock-Miller's section 2255 motion. The court first correctly noted that Brock-Miller's plea agreement included a waiver of the right to seek collateral relief, but that such waivers would not be upheld and enforced if, among other things, the defendant claimed ineffective assistance of counsel in relation to the negotiation of the plea agreement. Brock-Miller claimed that her conviction for unlawful possession of syringes was not a felony drug offense for purposes of the recidivist enhancement, the court noted. In analyzing Brock-Miller's claim, the court examined Indiana Code § 16-42-19-18, the correct statute for her predicate conviction. Unfortunately, though, the court cited the later-revised version which prohibits possession of "a hypodermic syringe or needle or an instrument adapted **for the use of a controlled substance or legend drug** by injection in a human being." Indiana Code 16-42-19-18 (2015) (emphasis added). The version in effect at the time of Brock-Miller's conviction made no mention of controlled substances. Unaware of the interven-

ing amendment to the law, the district court held that a conviction under that statute would meet the definition of a felony drug offense under 21 U.S.C. § 802(44), which would then fall within the scope of the recidivist enhancement. Based on that analysis of the wrong version of the Indiana law, the court concluded that counsel's performance was not deficient, that Brock-Miller had knowingly and voluntarily entered into her plea agreement, and that the court would therefore uphold the waiver provision in the plea agreement. The court denied the motion for relief under section 2255 and also denied a certificate of appealability. But this court found that Brock-Miller made a substantial showing that her guilty plea was not knowing and voluntary and that she did not receive effective assistance of counsel. We therefore granted a certificate of appealability and appointed counsel to represent Brock-Miller on appeal.

## II.

Brock-Miller raises two primary issues on appeal. First, she contends that her conviction under the 2007 version of the Indiana Legend Drug Act does not qualify as a felony drug offense under 21 U.S.C. § 802(44) because the Indiana law at the time of her conviction regulated only prescription drugs and thus did not prohibit or restrict conduct related to a controlled substance. The district court erred both factually and legally, she asserts, in concluding to the contrary. Second, she argues that her appointed lawyer was ineffective in plea negotiations when she did not properly object to the section 851 information and instead coerced Brock-Miller into entering a binding ten-year sentencing agreement to avoid risking an improperly-enhanced recidivist sentence after trial. Although

she maintains that she has established both deficient perfor-
mance and prejudice from counsel's errors, and that she is
entitled to the relief of withdrawing her guilty plea, in the
alternative Brock-Miller requests an evidentiary hearing.

**A.**

Section 2255 allows a prisoner in federal custody to move
for relief on "the ground that the sentence was imposed in
violation of the Constitution or laws of the United States." 28
U.S.C. § 2255(a); *Sawyer v. United States*, 874 F.3d 276, 278 (7th
Cir. 2017). The district court in which the motion is filed is
required to hold a prompt hearing on the matter unless "the
motion and the files and records of the case conclusively show
that the prisoner is entitled to no relief[.]" 28 U.S.C. § 2255(b).
When a district court denies a motion for relief under section
2255, we review the court's legal conclusions *de novo* and
factual findings for clear error. *Sorich v. United States*, 709 F.3d
670, 673 (7th Cir. 2013). We review for abuse of discretion the
court's decision not to hold an evidentiary hearing. *Martin v.
United States*, 789 F.3d 703, 706 (7th Cir. 2015). A decision that
rests on an error of law is always an abuse of discretion. *United
States v. Simon*, 727 F.3d 682, 696 (7th Cir. 2013).

**1.**

Brock-Miller is correct that the district court erred when it
concluded that her prior conviction under Indiana Code §16-
42-19-18 was a felony drug offense under 21 U.S.C. § 802(44)
and she was therefore eligible for a recidivist enhancement.
Brock-Miller initially was charged with possessing more than
a kilogram of heroin but later pled guilty to possessing 100
grams or more. Section 841(b)(1)(A) sets the penalty for a

kilogram quantity of heroin at ten years to life; section 841(b)(1)(B) sets the penalty for more than 100 grams at five to forty years. For both quantities, section 841(b) also proscribes a higher, recidivist sentence if "any person commits such a violation after a prior conviction for a **felony drug offense** has become final[.]" 21 U.S.C. §§ 841(b)(1)(A) and (B) (emphasis added). For the kilogram quantity, the mandatory minimum sentence increases from ten years to twenty and the maximum remains life. For the 100 gram quantity, the mandatory minimum sentence increases from five years to ten years and the maximum increases from forty years to life. Section 851 proscribes the procedure for establishing a prior conviction that qualifies, beginning with the government filing an information describing the prior conviction on which the enhancement will rest.

Although the district court correctly identified Indiana Code § 16-42-19-18 as the statute of conviction for Brock-Miller's prior offense, the court cited a later version of the statute when analyzing her claim. The first version, as we noted above, applied to the use of syringes only with legend drugs. The later version, on which the district court relied, criminalized the use of syringes with legend drugs **or** controlled substances. Under either version of the law, the term "legend drugs" was defined under Indiana law with reference to prescription drugs, not controlled substances such as heroin. *See* Indiana Code § 16-18-2-199 (1993). That section of the Indiana Code, enacted in 1993 and still valid at the time of Brock-Miller's offense in 2007, defined "legend drug" as a drug subject to 21 U.S.C. § 353(b)(1) or a drug listed in the prescription drug product lists published by the United States Depart-

ment of Health and Human Services.[5] Section 353(b)(1) provides that certain drugs "intended for use by man" require prescriptions by a physician before being dispensed. Thus, the term "legend drugs" under Indiana law in 2007 was limited to prescription drugs. Indeed, the government concedes this point. *See* Brief for the United States, at 18 ("And, in fact, she does appear to be right on this score" that the statute "includes prescription drugs that fall outside the federal definition of felony drug offenses.").

We turn to the federal statute to determine if Brock-Miller's conviction under the correct version of the Indiana law qualifies as a "felony drug offense" for the purposes of a recidivist enhancement. The term "felony drug offense" as used in section 841(b) is defined in 21 U.S.C. § 802(44):

> The term "felony drug offense" means an offense that is punishable by imprisonment for more than one year under any law of the United States or of a State or foreign country that prohibits or restricts

---

[5] The term "drug" itself is defined in another part of the Indiana statute. *See* Indiana Code § 16-42-19-2. The statute defines "drug" very broadly to include, among other things, substances listed in the United States Pharmacopeia and the National Formulary; articles or substances intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease in human beings or other animals; articles other than food intended to affect the structure or any function of the body of human beings or other animals; components of those first three categories; and "devices." The term "legend drug" is a subset of this broader category of drugs.

conduct relating to narcotic drugs, marihuana, anabolic steroids, or depressant or stimulant substances.

*See also Burgess v. United States*, 553 U.S. 124, 129 (2008) (section 802(44) provides the exclusive definition of "felony drug offense," including for the purpose of section 841(b) enhancements). Each category of covered drugs is, in turn, also defined by statute. *See* 21 U.S.C. § 802(17) (defining narcotic drugs); 21 U.S.C. § 802(16) (defining marihuana); 21 U.S.C. § 802(41)(A) (defining anabolic steroid); and 21 U.S.C. § 802(9) (defining depressant or stimulant substance). There is little to no overlap between the controlled substances listed in the federal definition of "felony drug offense" and the prescription "legend drugs" regulated by the Indiana law. No one disputes that heroin is not a legend drug. Brock-Miller therefore was not convicted "under any law of … a State … that prohibits or restricts conduct relating to narcotic drugs, marihuana, anabolic steroids, or depressant or stimulant substances." 21 U.S.C. § 802(44). And so Brock-Miller's conviction under section 16-42-19-18 was not a felony drug offense and would not have exposed her to any recidivist sentencing enhancement.

**2.**

Brock-Miller framed her argument in part by using the language of the categorical approach established in *Taylor v. United States*, 495 U.S. 575 (1990), and in part by employing a straight-forward application of the definition of "felony drug offense" provided by section 802(44). The government, in its briefing, also blends those approaches and seems to assume

that both the section 802(44) definition and the categorical approach must be employed to determine whether a conviction under state law meets the federal definition of "felony drug offense." The distinction makes no difference to the outcome here.[6] Whether we use the categorical approach

---

[6] Under *Taylor's* categorical approach, courts deciding whether a prior conviction qualifies as a predicate offense under the Armed Career Criminal Act ("ACCA") look only to the statutory elements of the prior offense, and not to the particular facts underlying the conviction. "If the relevant statute has the same elements as the 'generic' ACCA crime, then the prior conviction can serve as an ACCA predicate; so too if the statute defines the crime more narrowly, because anyone convicted under that law is 'necessarily … guilty of all the [generic crime's] elements.' … But if the statute sweeps more broadly than the generic crime, a conviction under that law cannot count as an ACCA predicate, even if the defendant actually committed the offense in its generic form. The key, we emphasized, is elements, not facts." *Descamps v. United States*, 570 U.S. 254, 260–61 (2013). The Indiana statute at issue here regulates prescription drugs, which broadly includes many substances that bear no relation to the federal "felony drug offense" exclusively defined in section 802(44). Because the Indiana statute encompasses much more conduct than the "felony drug offense" defined in section 802(44), Brock-Miller's Indiana conviction may not serve as a predicate offense for a recidivist enhancement, even if we were to apply the categorical approach. *Moncrieffe v. Holder*, 569 U.S. 184, 190–91 (2013) ("Because we examine what the state conviction necessarily involved, not the facts underlying the case, we must presume that the conviction 'rested upon [nothing] more than the least of th[e] acts' criminalized, and then determine whether even those acts are encompassed by the generic federal offense.") (quoting *Johnson v. United States*, 559 U.S. 133, 137 (2010)). Even if there were overlap between legend drugs and the drugs listed in section 802(44), we would have to assume under the categorical approach that Brock-Miller's conviction rested on prescription drugs and not the

(continued...)

defined in *Taylor* or simply compare the definition provided in section 802(44) with the law under which the offense was charged in state court, the result is the same: Brock-Miller's conviction under Indiana law does not qualify as a felony drug offense.

As far as we can tell, our circuit has not expressly employed the *Taylor* categorical approach in resolving whether a state conviction is a "felony drug offense" under section 802(44), instead simply comparing the straight-forward federal definition to the state statute of conviction. *See e.g.*, *United States v. Elder*, 840 F.3d 455, 461–62 (7th Cir. 2016) (finding that an Arizona conviction for possession of drug paraphernalia was not a felony drug offense within the meaning of section 841 because the statute under which the defendant was convicted capped the sentence at one year, contrary to the definition of "felony drug offense" provided by section 802(44), which requires the qualifying conviction to be punishable by a term of imprisonment of more than one year). *See also United States v. Brown*, 598 F.3d 1013, 1015–18 (8th Cir. 2010) (concluding that Iowa convictions for delivery of simulated controlled substances were not felony drug offenses by analyzing the

---

[6] (...continued)

section 802(44) controlled substances. In any case, as we discuss below, the State of Indiana does not consider heroin to be a legend drug. *See e.g. Bookwalter v. State*, 22 N.E.3d 735, 740–41 (Ind. Ct. App. 2014). Finally, although the government urges us to apply the modified categorical approach of *Shepard v. United States*, 544 U.S. 13 (2005), to save its argument, that case does not apply here because the 2007 version of the Indiana statute was not divisible. *See United States v. Yang*, 799 F.3d 750, 753 (7th Cir. 2015).

meaning of the phrase "relating to" in section 802(44) in connection with section 801(2)'s reference to the regulation of controlled substances); *United States v. Grayson*, 731 F.3d 605, 606–08 (6th Cir. 2013) (determining, without mention of the categorical approach, that a Michigan conviction for maintaining a drug house qualifies as a felony drug offense because the crime is punishable by up to two years' imprisonment and because the controlled substances referenced in the Michigan statute are congruent with those listed in section 802(44)); *United States v. Soto*, 8 Fed. Appx. 535, 541 (6th Cir. 2001) (noting that the Sixth Circuit "does not employ a categorical approach to determining whether a prior conviction constitutes a 'felony drug offense' for purposes of section 841(b)(1)"). *But see United States v. Ocampo-Estrada*, 873 F.3d 661, 667–69 (9th Cir. 2017) (applying the categorical approach in deciding whether a California conviction qualified as a "felony drug offense");[7] *United States v. Brown*, 500 F.3d 48, 59 (1st Cir. 2007)

---

[7] Although *Ocampo-Estrada* used the categorical approach without specifically addressing whether it was applicable, a week after that decision was issued, an unpublished decision of the Ninth Circuit appeared to take the position that the categorical approach might not apply in this context:

> Though both parties argue that the categorical approach applies when determining whether a prior conviction is a "felony drug offense" under § 841, we have never held in a published opinion that it applies in this context. Though we need not reach the issue, we note that the categorical approach may be a poor fit for sentencing determinations under 21 U.S.C. § 851, which sets up a statutory, trial-like procedure for determining whether

(continued...)

(analyzing section 802(44) by eschewing an examination of the particular facts of the putative predicate crime and instead reading the term "felony drug offense" categorically under *Taylor* and *Shepard v. United States*, 544 U.S. 13 (2005)); *United States v. Nelson*, 484 F.3d 257, 261 n.3 (4th Cir. 2007) (applying both the section 802(44) definition and *Shepard* in determining whether a conviction under 18 U.S.C. § 924(c)(1) is a felony drug offense for purposes of the recidivist enhancement); *United States v. Curry*, 404 F.3d 316, 320 (5th Cir. 2005) (using the statutory definition of felony drug offense along with *Shepard* in determining whether a prior conviction fits the recidivist enhancement provision). The Supreme Court has characterized section 802(44) as providing the "exclusive definition of 'felony drug offense,'" which has the benefit of bringing "a measure of uniformity to the application of § 841(b)(1)(A) by eliminating disparities based on divergent state classifications of offenses." *Burgess*, 553 U.S. at 134. We reserve for another day the question of whether the *Taylor/Shepard* categorical approach applies to the term "felony drug offense" for the purpose of the recidivist enhancement. Under either approach, Brock-Miller's Indiana conviction was not a felony drug offense. The district court erred when it analyzed the wrong version of the Indiana law, which then led the court to mistakenly conclude that Brock-Miller's Indiana conviction qualified as a felony drug offense.

---

[7] (...continued)

> the defendant has a prior conviction for a "felony drug
> offense."

 *United States v. Torres*, 711 Fed. Appx. 829, — n.2 (9th Cir. 2017). As in the instant case, the approach taken did not affect the outcome.

**B.**

Brock-Miller's section 2255 claims are founded on her Sixth Amendment right to counsel, "a right that extends to the plea-bargaining process." *Lafler v. Cooper*, 566 U.S. 156, 162 (2012). In particular, during plea negotiations, defendants are entitled to "the effective assistance of competent counsel." *Lafler*, 566 U.S. at 162 (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970)). *See also Missouri v. Frye*, 566 U.S. 134, 141 (2012) (negotiation of a plea bargain is a critical phase of litigation for purposes of the Sixth Amendment right to effective assistance of counsel). We apply the familiar two-part test under *Strickland v. Washington*, 466 U.S. 668 (1984), when we evaluate challenges to guilty pleas based on ineffective assistance of counsel. *Lafler*, 566 U.S. at 162–63; *Hill v. Lockhart*, 474 U.S. 52, 58 (1985). Under *Strickland*, a defendant must first demonstrate that counsel's performance was deficient. Second, a "defendant must show that the deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687.

**1.**

Under the first part of the *Strickland* test, we consider whether counsel's representation fell below an objective standard of reasonableness. *Strickland*, 466 U.S. at 687–88. Brock-Miller contends that counsel's performance was deficient in several critical respects. First, counsel failed to investigate Brock-Miller's criminal record in Indiana to determine the statute under which Brock-Miller had been charged with possessing syringes. This led to counsel's second error, filing a frivolous objection to the government's section 851 information citing the wrong Indiana statute. Counsel then failed to

seek a ruling on that objection, and instead grossly over-estimated Brock-Miller's sentencing exposure. Brock-Miller contends that she was led to believe that she faced a mandatory minimum of twenty years, a minimum that *never* applied to her, even considering the kilogram quantity of heroin initially charged. That led to counsel advising Brock-Miller to accept a plea deal that was really no deal at all. Had counsel investigated Brock-Miller's record in Indiana, she contends that counsel would have realized that Brock-Miller had a meritorious objection to the section 851 information and that her client was not subject to an enhanced sentence for recidivists. Brock-Miller asserts that competent counsel would have correctly calculated her sentencing range, filed a meritorious objection and demanded a ruling, and then either negotiated a better deal or advised her to reject the government's offer and go to trial.

In the plea bargaining context, a reasonably competent lawyer must attempt to learn all of the relevant facts of the case, make an estimate of the likely sentence, and communicate the results of that analysis to the client before allowing the client to plead guilty. *Spiller v. United States*, 855 F.3d 751, 755 (7th Cir. 2017); *Gaylord v. United States*, 829 F.3d 500, 506 (7th Cir. 2016); *Bethel v. United States*, 458 F.3d 711, 717 (7th Cir. 2006). *See also Moore v. Bryant*, 348 F.3d 238, 241 (7th Cir. 2003) (to demonstrate deficient performance in the context of a guilty plea, a petitioner must demonstrate that his counsel's advice regarding the plea was objectively unreasonable). Brock-Miller's counsel appears to have failed that standard on several fronts.

Because the district court declined to hold a hearing on Brock-Miller's section 2255 motion, the record is not fully developed on several important issues. From the limited record of the plea proceedings, it appears that counsel first failed to check Brock-Miller's criminal record and discern the relevant statute for the predicate conviction. Brock-Miller had been convicted under Indiana Code § 16-42-19-18, but counsel incorrectly cited Indiana Code § 35-48-4-8.3 as the basis for the conviction. That threshold factual error may have led counsel to erroneously conclude that Brock-Miller was subject to the recidivist enhancement, which in turn may have caused counsel to make significant errors in predicting the likely sentence. A lawyer's failure to learn the relevant facts and make an estimate of the likely sentence constitutes deficient performance. *Moore*, 348 F.3d at 242. *See also Padilla v. Kentucky*, 559 U.S. 356, 368–69 (2010) (advice to accept guilty plea which led to deportation found deficient where the consequences of the plea could easily be determined by reading the removal statute, the deportation was mandatory, and the advice that a guilty plea would not result in deportation was incorrect); *Bridgeman v. United States*, 229 F.3d 589, 592 (7th Cir. 2000) (in the plea context, inaccurate advice that resulted from the attorney's failure to undertake a good-faith analysis of all of the relevant facts and applicable legal principles establishes deficient performance under *Strickland*).

The errors asserted here are very similar to those alleged in *Gaylord v. United States*, 829 F.3d 500 (7th Cir. 2016). In that case, the defendant pled guilty to conspiracy to distribute oxycodone and received an enhanced sentence under section 841(b)(1)(C), which applies when "death results" from the use

of the charged substance. Gaylord distributed the drug to a person who then passed it on to another person who ingested it along with cocaine and subsequently died. Counsel failed to alert Gaylord that postmortem and forensic pathology reports did not support the conclusion that oxycodone was the but-for cause of the death at issue. Counsel also failed to challenge the application of the "death results" enhancement to Gaylord's sentence. Gaylord's guidelines range would have been 210 to 262 months but the enhancement subjected him to the twenty year mandatory minimum and the court sentenced Gaylord to twenty years' imprisonment. Gaylord subsequently challenged his sentence with a section 2255 motion. Like Brock-Miller, his plea agreement waived his rights to a direct appeal and any collateral challenge. As with Brock-Miller, we recognized that a defendant may overcome such waivers by demonstrating that the plea agreement was the product of ineffective assistance of counsel. 829 F.3d at 503–06.

Gaylord argued that counsel was deficient for failing to adequately investigate his case and failing to provide him with the forensic and pathology reports so that he could make an informed decision regarding whether to plead guilty. He also contended that counsel was deficient for failing to challenge the application of the "death results" enhancement to his sentence. We agreed that, if proven, these alleged errors would constitute deficient performance under *Strickland*. We found that there was a substantial probability that the application of the enhancement in Gaylord's case was inconsistent with the prevailing but-for standard of causation. The medical reports provided no evidence that the drug Gaylord distributed caused the subject death. Because Gaylord was not provided

with a hearing on his claim, the record contained no evidence regarding whether counsel was aware of the proper causation standard, whether he had examined the medical reports, and whether he had provided Gaylord with the information necessary for a knowing and voluntary plea. In sum, we concluded that Gaylord's allegations supported his claim that his counsel performed deficiently by failing to provide him with the postmortem and forensic pathology reports and not challenging the application of the "death results" enhancement to his sentence. 829 F.3d at 506–08. We remanded for a hearing so that Gaylord could prove his allegations.

Brock-Miller's circumstances are directly analogous. Counsel's apparent error in identifying the applicable Indiana statute, the frivolous challenge under section 851, and the failure to file a plainly meritorious objection could constitute deficient performance if proved. *See also Prou v. United States*, 199 F.3d 37, 48 (1st Cir. 1999) (a failure to raise a clearly meritorious objection to a section 851 information when presenting it would have risked nothing amounts to constitutionally deficient performance); *Hinton v. Alabama*, 134 S. Ct. 1081, 1089 (2014) ("An attorney's ignorance of a point of law that is fundamental to his case combined with his failure to perform basic research on that point is a quintessential example of unreasonable performance under *Strickland*."). Brock-Miller appears to have a strong case for section 2255 relief if these errors led to counsel failing to make an estimate of the likely sentence, and instead grossly overestimating her client's sentencing exposure. Any resultant advice to Brock-Miller to take the government's plea offer may well have been founded on deficient performance. *Hurlow v. United States*, 726

F.3d 958, 967–68 (7th Cir. 2013) ("a plea, even one that complies with Rule 11, cannot be 'knowing and voluntary' if it resulted from ineffective assistance of counsel."). On remand, if Brock-Miller is able to prove deficient performance in the negotiation of her plea agreement, the court should not hold her to the waiver of her right to collaterally challenge the plea agreement with a section 2255 motion. *Hurlow*, 726 F.3d at 966–67 (in order to overcome an appeal waiver in a plea agreement, a defendant must allege that he entered the plea agreement based on advice of counsel that fell below constitutional standards).

Before we turn to the second part of the *Strickland* analysis, we must address a few issues raised by the government on the question of deficient performance. At various points in its briefing, the government concedes that Brock-Miller's attorney made mistakes. *See e.g.* Brief for the United States, at 14 ("Brock-Miller offers a substantial argument that her lawyer made a real mistake[.]"); at 18 ("And, in fact, she does appear to be right on this score" that legend drugs are prescription drugs that fall outside the federal definition under section 802(44)); at 18 ("To be sure, Brock-Miller's initial objection [to the section 851 information] was lacking."). Nevertheless, the government contends that counsel's errors were not suffi-ciently egregious to meet the *Strickland* standard for deficient performance. The government characterizes Brock-Miller's argument as both "sophisticated" and "convoluted," and in any event beyond what is required by *Strickland*.

We disagree. The alleged errors, if true, were contrary to the well-settled *Strickland* standard for the plea bargaining context. *Spiller*, 855 F.3d at 755; *Gaylord*, 829 F.3d at 506; *Bethel*,

458 F.3d at 717. Brock-Miller asserts that counsel failed to learn the relevant facts of the case when she failed to identify the correct Indiana statute for the predicate conviction. She also alleges that counsel then failed to examine that statute to determine if it met the federal definition of felony drug offense. That analysis would have required little more than reading the Indiana statute and the provisions it cross-referenced, and comparing them to the federal definition of felony drug offense. Counsel would then have realized that heroin was not a legend drug, triggering the filing of an appropriate and meritorious objection. Competent counsel would not have then advised her client to accept a plea that was based on an unwarranted recidivist enhancement.

The government counters that, at the time Brock-Miller was charged, "Indiana courts had sustained convictions for unlawful possession of a syringe in order to ingest heroin." Brief for the United States, at 21.[8] The government cites *Cherry v. State*, 971 N.E.2d 726 (Ind. Ct. App. 2012), in support of its

---

[8] We assume the government simply misspoke when it used the plural "courts," in that claim. *Cherry* is the only Indiana case cited in support and it is the only case we were able to find in which a court sustained a conviction under section 16-42-19-18 in connection with heroin. The assumption made in *Cherry* is somewhat understandable in light of the history of Indiana laws governing the possession of syringes. A version of the statute in operation in 1972 appears to have covered possession of a syringe "adapted for the use of narcotic drugs by injection in a human being." *Cooper v. State*, 357 N.E.2d 260, 264 (Ind. Ct. App. 1976). And Indiana added controlled substances back into the mix in a 2015 amendment. But a competent lawyer reading the 2007 version would have seen that the statute applied only to legend drugs, which in turn encompassed only prescription drugs.

claim that "[b]y all outward appearances, her crime seemed to fit the broad definition of felony drug offense." It is true that an Indiana court in *Cherry* sustained a conviction under Indiana Code 16-42-19-18 for possessing a syringe in connection with heroin. But the defendant in that case did not challenge whether heroin was a legend drug and the court simply assumed, without deciding, that heroin came within the statute. No Indiana court faced or decided the question of whether heroin was a legend drug until *Bookwalter* directly confronted the issue in 2014 and concluded that "intent to inject heroin is not fairly covered by the Legend Drug Act's definition of the offense of possession of a syringe." 22 N.E.3d at 741. That decision was followed, of course, by Brock-Miller's own collateral challenge to her Indiana conviction which also resulted in a finding that possessing a syringe in connection with heroin is not covered by the statute. A lawyer reviewing *Cherry* would have seen that the case did not decide or even address the issue presented here. Reading statutes and discerning their plain meaning is neither convoluted nor sophisticated; it is what lawyers must do for their clients every day. The *Strickland* standard requires more than an analysis of "all outward appearances." Brock-Miller has presented enough evidence to warrant a hearing on deficient performance. At that hearing, counsel will have an opportunity to respond to Brock-Miller's allegations and characterization of the events leading to the plea deal. If the district court finds that counsel's performance was deficient, the court should set aside the waiver of appeal and collateral challenge rights, and reach the merits of Brock-Miller's section 2255 claim.

**2.**

In the context of a guilty plea, the second part of the *Strickland* test:

> focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the "prejudice" requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.

*Hill*, 474 U.S. at 59. *Hill* set the standard for prejudice where the defendant claimed "that ineffective assistance led to the improvident acceptance of a guilty plea[.]" *Lafler*, 566 U.S. at 163 (quoting *Hill*, 474 U.S. at 59). In *Lafler*, the defendant asserted that counsel's deficient performance led to the defendant *rejecting* a favorable plea and instead standing trial:

> In these circumstances a defendant must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (*i.e.*, that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

*Lafler*, 566 U.S. at 164. In *Frye*, the defendant asserted that counsel's failure to convey the prosecutor's favorable plea offers to the defendant before the offers lapsed prejudiced him.

That led to yet another formulation of the necessary prejudice showing:

> In order to complete a showing of *Strickland* prejudice, defendants who have shown a reasonable probability they would have accepted the earlier plea offer must also show that, if the prosecution had the discretion to cancel it or if the trial court had the discretion to refuse to accept it, there is a reasonable probability neither the prosecution nor the trial court would have prevented the offer from being accepted or implemented.

*Frye*, 566 U.S. at 148. All of this demonstrates that the proof of prejudice must be matched to the circumstances of the deficient performance and the relief sought.

Brock-Miller, who began this process *pro se*, has asserted in various ways that, but for counsel's deficient performance, the outcome of the proceedings would have been different. In particular, she has argued that the sentencing court would have dismissed the section 851 information, which would have afforded Brock-Miller much greater leverage in plea negotiations. With a correct ruling on an appropriate objection to the section 851 information, she would not have been subject to the severe doubling effect of the recidivist enhancement. She would have had much less to lose by going to trial, she contends, because she would have faced a smaller sentence and the government would have been required to prove that the full kilogram of heroin charged in the indictment was foreseeable to someone who joined the conspiracy at the very end, in a deal involving only 54 grams of heroin. With a

guidelines range of 92–115 months (a range that would now be 77 to 96 months, see footnote 4 *supra*), she would have had little incentive to agree to a 120-month term of imprisonment, she maintains.

She asserts that, if counsel had not been deficient, she either would have gone to trial or negotiated a more favorable plea agreement. *Hill* sets the standard for prejudice for her claim that she would have gone to trial, and *Frye* comes closest to setting the standard for a claim to renegotiate the plea without the specter of an improper recidivist enhancement looming over the proceedings. *Hill*, 474 U.S. at 59 (the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial); *Frye*, 566 U.S. at 147 ("To establish prejudice in this instance, it is necessary to show a reasonable probability that the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time."). The government denies that it would have offered any other deal. That claim is somewhat belied by the deals the government did offer to other co-conspirators. Brock-Miller notes that the government made much more favorable deals with many of the other charged co-conspirators. Indeed, Oscar Perez, one of the Indiana prisoners who led the entire conspiracy, received a sentence identical to that of Brock-Miller. Brock-Miller also points to more than half a dozen co-conspirators who were allowed to plead guilty to reduced drug quantities or lesser included offenses. The district court denied Brock-Miller any hearing on her section 2255 motion based on its erroneous conclusion that counsel's performance was not deficient. Brock-Miller has presented

sufficient evidence to justify a hearing on both deficient performance and prejudice under *Strickland*. *Martin*, 789 F.3d at 706 (in a section 2255 proceeding, a district court must grant an evidentiary hearing if the petitioner alleges facts that, if proven, would entitle him to relief). We therefore reverse the judgment of the district court, and remand for a hearing on the questions of whether counsel's performance was deficient and, if so, whether Brock-Miller was prejudiced by counsel's errors.

## III.

When Brock-Miller was convicted under Indiana Code § 16-42-19-18, the factual basis for the charge was that she used the syringe to inject heroin. But heroin is not a legend drug and, in 2007, the statute prohibited the use of syringes only in connection with legend drugs. Brock-Miller mentioned in her *pro se* section 2255 motion to the district court that she was seeking to vacate in state court the very conviction that served as the predicate for a recidivist sentence. After the district court denied her section 2255 motion, the state court ruled in Brock-Miller's favor on her due process challenge to her Indiana conviction, concluding that Brock-Miller had not actually violated the Indiana statute because heroin is not a legend drug.

Once counsel was appointed in the instant appeal, Brock-Miller filed a Rule 60(b) motion to vacate the judgment in the case now on appeal because it relied on the now-vacated state court judgment.[9] Once the appeal was filed, though, the district

---

[9] Brock-Miller conceded in her counseled Rule 60(b) motion that she did

(continued...)

court was divested of jurisdiction to consider that motion. Brock-Miller simultaneously filed a Rule 62.1 "Motion for Indicative Ruling," asking the court to indicate how it would rule on the Rule 60(b) motion if it had jurisdiction. Both of those motions remain pending in the district court.

Brock-Miller has presented substantial evidence that her lawyer in her federal criminal case made a series of factual and legal errors that could amount to deficient performance. She persuasively asserts that competent counsel would not have advised a client to accept the proffered plea agreement under these circumstances, and that she would have insisted on going to trial rather than accept these terms. We now know that the Indiana conviction, the entire basis for the recidivist enhancement, has been vacated on the ground that Brock-Miller did not violate the statute. On remand, the court should expeditiously hold a hearing to resolve the questions of whether counsel's performance was deficient, and if so, whether Brock-

---

[9] (...continued)
not alert the district court in her section 2255 proceedings to her pending state court post-conviction proceedings. Although she may not have adequately alerted the district court to the nature of her state court challenge and the attendant need to hold her section 2255 motion in abeyance pending the resolution of that challenge, she did mention the state court proceeding in paragraph 14, page 12, of her section 2255 motion. In response to the question whether she had "any motion, petition, or appeal now pending (filed and not decided yet) in any court for the judgment you are now challenging," she checked the "yes" box and specified, "Montgomery County Indiana Cause No. 54C01-0709-FC-00122 Post conviction relief. Fifth and Sixth Amendment violations." That was the very conviction cited by the government in its section 851 information.

Miller was prejudiced by that performance. The district court may also consider Brock-Miller's pending motions under Rules 60(b) and 62.1.

REVERSED AND REMANDED.